Daniel S.  Szalkiewicz, Esq.  (DS2323)
DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
23 WEST 73RD STREET
SUITE 102
NEW YORK, NEW YORK 10023
*Attorneys for Plaintiff J.G.*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| J.G., <br><br> Plaintiff, <br><br> v. <br><br> TYLER JONES a/k/a TYLER JOHN JONES <br><br> Defendant. | **COMPLAINT** <br><br> Case Action No. 24-cv-8232 |

Plaintiff J.G. ("Plaintiff" or "J.G."), by her attorneys DANIEL SZALKIEWICZ & ASSOCIATES, P.C., as and for her Complaint hereby alleges, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1.       In November 2022, Defendant TYLER JONES a/k/a TYLER JOHN JONES ("Jones" or "Defendant") asked to borrow Plaintiff's phone and, without her knowledge, located her intimate content, photographed it with his phone, and returned the phone to Plaintiff.  Once home, Defendant posted Plaintiff's stolen intimate images online and continued to do so on a near-nightly basis for more than a year.

2.       In the months that followed, Defendant, Plaintiff's friend's boyfriend, repeated this process at least once, this time locating even more photographs and sending them to himself using Airdrop.

1

3.      Defendant routinely uploaded Plaintiff's intimate images on 4Chan alongside identifying information about Plaintiff, including her name, workplace, and hobbies which allowed countless third parties to locate Plaintiff and contact her with relation to the images. Defendant uploaded Plaintiff's intimate content online more than 100 times.

4.      As egregiously, if not more so, Defendant began contacting Plaintiff's friends online asking if they would be interested in viewing intimate pictures of her.

5.      While Plaintiff was, for a time, ignorant as to who had been posting her images, contextual information provided in Defendant's posts and I.P. addresses provided by 4Chan and Meta proved Defendant was the one habitually posting her content.

6.      Worse yet, Plaintiff was just one of many women Jones had victimized in such a manner over the years.  In fact, a simple Google search revealed that Jones had pleaded guilty to charges of invasion of privacy and disseminating child pornography in 2013 after he secretly videotaped three females – including at least one minor – and uploaded the recordings onto pornographic websites.

7.      Additionally, review of 4Chan posts made using the same I.P. addresses that posted Plaintiff's images showed Defendant had been uploading images of his ex-wife, then-current partner, a co-worker from 2016, his brother's ex-girlfriend, his ex-wife's friend, a co-worker's wife, and a prior romantic partner along with his 2013 victims during the same period.

8.      On or about March 7, 2024, Jones' devices were seized by the New Jersey State police.  Later that same day, Defendant confessed to his partner, Plaintiff's friend, what he had done to Plaintiff.

9.       Defendant's dissemination of Plaintiff's intimate content was so prolific that Plaintiff will never be able to scrub the internet of her naked body.  Defendant's actions have

caused Plaintiff unimaginable levels of emotional distress and have irretrievably destroyed her sense of safety and privacy.

10.     Defendant has preyed upon women his entire adult life and Plaintiff is hopeful that the criminal justice system will recognize the heinousness of his actions and appropriately punish him for the harm he has caused her and his other victims.

11.     Plaintiff brings this lawsuit, however, to be made whole for the unfixable damage Defendant has done to her: for the moments that have been inalterably shaped and affected by Defendant's conduct; for the paranoia and unease she is now forced to carry with her as she moves through life; for the time and experiences Plaintiff regularly lost when she was required to divert her time and energy to memorializing, reporting, and requesting removal of Defendant's near-nightly posts; to fund the lifetime of online monitoring she will require to monitor and combat repostings; and to deter Defendant and others like him from ever doing this to another human being again.

12.     Accordingly, Plaintiff brings this action seeking injunctive, declaratory, and monetary relief against Defendant for violations of 15 U.S.C. § 6851, New Jersey's nonconsensual pornography statutes, New Jersey's invasion of privacy statute, and the reckless or intentional infliction of emotional distress.

**THE PARTIES**

13.     Plaintiff J.G. is a citizen of the County of Gloucester, State of New Jersey.

14.     Defendant Jones is a citizen of the State of Pennsylvania, with a last known address at 1407 N. 7th St., Apt. 2 Philadelphia, PA 19122.

15.     Defendant Jones is a carpenter who works or worked for Hivemind, LLC ("Hivemind Construction"), a cooperatively-owned construction and fabrication company based in West Philadelphia.

## JURISDICTION AND VENUE

16.     This action is brought pursuant to 28 U.S.C. § 1332(a)(1) based upon Diversity of Citizenship because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and it is between a citizen of New Jersey and a citizen or subject of a different state.

17.     This action is also brought pursuant to 28 U.S.C. § 1331, federal question, pursuant to 15 U.S.C. § 6851.

18.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in New Jersey.

## FACTUAL ALLEGATIONS

**Plaintiff Meets Defendant, a Close Friend's Boyfriend**

19.     Plaintiff was first introduced to Tyler Jones in mid-April of 2022 by her friend T.I., who was dating Jones at the time.  Jones and Plaintiff's partner were fast friends and, before long, the two couples grew close.

20.     Extenuating circumstances – including the sale of the apartment Jones and T.I. were renting and a crashed motorcycle – further strengthened Plaintiff's bond with T.I. and her partner's bond with Jones.  From approximately November of 2022 until January of 2023, T.I. and Jones even lived with Plaintiff's partner as they searched for a new place to live.

21.     When T.I. and Jones found and moved into a new apartment together, the two couples remained close.

**Defendant Begins Contacting Plaintiff's Friends**

22.     On December 17, 2023, Plaintiff's friend received an unsolicited Instagram message from an unknown account – @paladopoliz – containing Plaintiff's images.

23.     The communications indicated that @paladopoliz had "randomly reached out to a couple guys who follow her" but was "[n]ot looking to mess with her or anyone else, just sharing with people if they are interested."

24.     The account sent the images, asked "Thoughts?" and then wrote "Feels bad but feels good? Her face is cute, her body is better…What does that mean I can keep going…Hard to not want more?...Good…Another?...Another?"

25.     In total @paladopoliz sent Plaintiff's friend eight images of Plaintiff which she had previously taken of herself in underwear or a state of undress.

26.     Plaintiff's friend immediately alerted her as to the communication.  Over the course of the next two days Plaintiff filed a police report with the Glassboro Police Department and contacted an attorney.

27.     Though not known to her at the time, another friend had also been receiving messages from @paladopoliz stating:

Hi. Do you know [Plaintiff's first and last name]? Would you be interested in pictures of her?
Hey
Hello
Probably not
You interested?
You want a preview?

28.     Plaintiff was horrified.

29.     Making matters worse, no one third party possessed all of the images which had been posted, meaning @paladopoliz was unlikely to be a former romantic partner and instead had somehow accessed her phone or cloud.

**Plaintiff First Finds Images and Information Online**

30.     Plaintiff searched the internet for the images received by her friend and was devastated to see dozens – if not hundreds – of images of herself online, the vast majority of which showed her in her underwear or partially or completely naked.

31.     Plaintiff contacted and retained an attorney and began the arduous and heartbreaking process of gathering evidence and fighting for removal of the nonconsensually posted content.

32.     Plaintiff's attorney filed a lawsuit and issued subpoenas, but as Plaintiff waited for Instagram to respond, she narrowed down the identity of the person behind her nightmare.

33.     Defendant's postings online provided Plaintiff with valuable insight about the person who was sharing her images.

34.     First, based on some of the pictures posted, it was clear that the person had been Plaintiff's home and used his own phone to photograph the images as they appeared on Plaintiff's phone.  Second, the hand holding her phone appeared to belong to a man.  Third, the presence of a candle Plaintiff had purchased while on vacation and absence of Halloween décor allowed her to form a date range for when the photographs were taken from her - between July 2023 and September 1, 2023.  Fourth, some of the postings contained information about the poster's relationship with Plaintiff, including "Friend I met this year, never fucked, neither of us

are single, though she at least finds me physically attractive.  Airdropped them to myself after I

borrowed her phone across the table from her."

35.     Defendant's postings of Plaintiff were often – but not always – accompanied by

comments about her body and how he had acquired the content and included statements such as:

| Date | Statement |
|---|---|
| November 11, 2022 | Yeah her body blows my mind.  She's so tiny and might have the firmest, perkiest tits I've seen. |
| December 3, 2022 | Stolen friend |
| December 18, 2022 | No spread pussy |
| December 28, 2022 | Friend I met this year, never fucked, neither of us are single, though she at least finds me physically attractive.  Airdropped them to myself after I borrowed her phone across the table from her…Perfect tits, and she's so tiny |
| August 16, 2023 | Think I cursed myself there lol here's the raw ;) |
| November 21, 2022 | Nah sent them to myself from her phone |
| November 24, 2023 | Have you ever stolen nudes from a friend? Or traded with a friend? If so, what happened? How did you steal them? Post pics that you shouldn't have. |
| February 21, 2023 | shouldn't share |
| November 21, 2022 | Nice. Yeah with this girls face, she's very easy to find. Care to share one without face? Clothed even? |
| April 5, 2023 | About 40 pics. No vids |
| March 8, 2023 | Stolen nudes from a friend. She's super tiny and has some of the most perfect tits I've ever seen.  No butthole pics at all really |
| November 21, 2022 | Friend, newly acquired tonight |
| September 24, 2023 | Might be out of full face and tits.  Got lots of her tits though |
| September 7, 2023 | I always enjoy the pics of [Plaintiff's first name.] |
| January 24, 2023 | Nah she works an administrative job |
| January 10, 2023 | No spread holes |
| February 1, 2023 | Don't have much ass |
| November 22, 2022 | Asked to look something up on her phone cuz mine was dying, airdrop |
| January 18, 2023 | TJ Hooker#8757 |
| December 18, 2022 | Friend, have more, and other friends |
| November 25, 2022 | Friend's stolen nudes |
| November 21, 2022 | Friend whose pics I sent to myself last night |
| November 21, 2022 | Friend… Newly acquired tonight |
| April 5, 2023 | Oof don't wanna imagine. She'd be embarrassed and a little turned on I think…I wish so bad there were vids.  My dream is to watch her ride a cock |

| March 4, 2023 | To have her ride me..she's so small, and those tits bouncing on top of me.. |
| February 20, 2023 | Of course. They're amazing. Love that she has no idea how many eyes are on them |
| March 12, 2023 | Me too. Like knowing that more people get to appreciate them |
| April 5, 2023 | 40 pics.  I've posted maybe 8.  Some are really similar though |
| January 11, 2023 | Stolen friend has no idea her nudes are out there |
| January 10, 2023 | A few but not posting her full face |
| January 24, 2023 | 5'2" |
| November 21, 2022 | 27 |
| November 21, 2022 | Airdrop while she was sitting in front of me |
| December 28, 2022 | Sent them to myself while sitting across the table from her |
| November 21, 2022 | Both not single |
| November 21, 2022 | Friend whose nudes I stole last night RT |
| November 21, 2022 | Stolen nudes threat.  Newly acquired nudes of a friend as of last night |
| December 23, 2023 | [Plaintiff's first name] |
| November 21, 2022 | Nah sent them to myself from her phone |

36.     The information enabled Plaintiff to identify the poster: her friend's boyfriend:

Tyler Jones.

37.     A quick Google search for Tyler Jones all but confirmed Plaintiff's belief.  A

news article from 2013 provided the following:

> MEDIA – A 21-year-old Villanova student entered an open guilty plea
> Monday to charges of invasion of privacy and dissemination of child
> pornography for secretly videotaping three women as they were dressing
> and posting the videos online.
>
> One of the women was 17 at the time Tyler Jones used his iPhone to make
> the recording, leading to the child pornography charge.
>
> According to an affidavit of probable cause, Jones was a relative of a friend
> the women were visiting in Switzerland last summer. He uploaded the
> videos to pornographic websites after returning to Villanova.
>
> Police were alerted to the incident after one of the victims was told that
> there was a video of her dressing online. Jones, represented by defense
> attorney Gary Silver, allegedly wrote an email to the woman admitting what
> he had done and apologizing. He also allegedly admitted to police he had
> recorded the women using his iPhone after his arrest Feb. 12.

Judge John Capuzzi ordered psychosexual and psychiatric evaluations for Jones, as well as an evaluation from the state Sexual Offenders Assessment Board to determine whether he is a sexually violent predator.

Sentencing has been set for Feb. 14.  The case is being handled by Assistant District Attorney Ryan Grace.

38.     Concerned for the privacy and wellbeing of her friend, Plaintiff confronted Defendant's then-partner about what was happening – including the anonymous Instagram account – and what she had learned about Defendant.  Plaintiff explained to T.I. that, no matter what decision they made, it was important that the information not be relayed to Jones so as to minimize the risk of him destroying evidence.

39.     To Plaintiff's horror and frustration, T.I. had been aware of the criminal charges against Jones relating to child pornography but insisted Jones was not responsible for what was happening to Plaintiff.

40.     Within an hour after Plaintiff contacted T.I., the anonymous Instagram account was deleted.

41.     If Plaintiff had any remaining doubt about Jones' responsibility, it disappeared along with the Instagram account.

42.     Unfortunately, soon after Plaintiff spoke with T.I., Jones' postings became more identifying and frequent as he began to seek assistance in spreading Plaintiff's content as widely as possible.  Defendant asked his brethren to contact her friends, repost her throughout the internet, and help him expose her; he provided them with her place of business and what she did for work.

| January 28, 2024 | Hm maybe sending her pics to her male friends, general reposting. Loading to other sites |
| January 28, 2024 | Would like help exposing |
| February 2, 2024 | She's teaching a photography class this semester.  Works with the alumni program. |

| February 2, 2024 | Anyone know [Plaintiff's first name]?  She works at [Plaintiff's employer], I think she teaches a class there? |
|---|---|

**Defendant Extends his Efforts to Harm Plaintiff Beyond 4Chan**

43.     In February 2024, Defendant began using 4Chan to direct views to other platforms, such as Discord and Telegram.

44.     Defendant would create groups on these sites dedicated to J.G.  In one such group, Defendant created the group "[Plaintiff's Employer] University Professor Exposed" and told people to join to harass Plaintiff as a group.

45.     Defendant's goal was to disseminate Plaintiff's images as broadly as possible.  In encouraging third parties to also share Plaintiff's content, the amount and location of her images online increased exponentially.

**Plaintiff Endeavors to Seek Justice in the Criminal Justice System**

46.     Plaintiff's first and foremost wish was and continues to be that Defendant is criminally punished for his wrongs.

47.     When the police directed Plaintiff not to confront Defendant or inform his other victims, Plaintiff did her best to respect that.

48.     Unfortunately for Plaintiff, while the police were, in fact, working on building a case against Jones over the next several months, Jones continued his routine posts of her naked body online.

49.     Plaintiff dutifully monitored the internet for new content and promptly advocated for removal once Jones had uploaded it, but was effectively gagged from taking steps that would stop him from uploading it in the first place.

**Defendant Continues Posting Plaintiff's Images on a Near Nightly Basis, Forcing Plaintiff to Spend Life Lurking on Pornographic Boards to Prevent Further Harm**

50.     Even though Plaintiff and her attorney devoted countless hours to removing the content as soon after it was posted as possible, Jones' posting was prolific.

51.     Like clockwork, Defendant posted the images and, inevitably, some of his viewers would use the images and/or information provided by him to located Plaintiff online and contact her.

52.     Plaintiff had three options: 1) engage the sexually deviant stranger in conversation and convince him/her to send her a link to her images; 2) search online for her images without direction by checking online message boards Defendant was known to visit; or 3) do nothing and wait for the content to be searchable.

53.     Disinterested in fulfilling the fantasies of those who contacted her or allow her images to be online for any significant period of time, Plaintiff often chose option 2.  As a result, for a period of approximately four months, she spent nearly every night perusing nonconsensual pornography online waiting for Defendant to begin posting her naked body.

54.     Scrolling through dozens, hundreds, and likely thousands of images of women being posted without their permission or consent while struggling to come to terms and cope with Jones' ongoing violation of her privacy was emotionally taxing.

55.     Plaintiff was in the forums so often that she began to recognize not just Defendant's other victims, but the other women, like her, who were being posted by other people who had stolen photos or were resharing images of a former partner.  Plaintiff wanted to save them all but could not.

56.     Plaintiff went from being a socially outgoing person to a complete shut in.  Each trip outside of the house was not just time when she was unable to search for new uploads but also limitless opportunity for her to be recognized by someone who had visited Defendant's message boards and seen her naked body.

57.     As someone from her inner circle was the one responsible for posting the images, she began to lose trust and faith in even those closest to her.

58.     During these four months there were far more bad days than good and Plaintiff needed to continually remind herself that even though she had to remain silent for now, she was the voice for all of Defendant's other victims and soon there would be justice.

**Defendant's Brazen Continuation of his 2013 Crime**

59.     Despite pleading guilty to invasion of privacy and dissemination of child pornography in 2013, Defendant continued to post images of the young women and boast about his accomplishments online, calling his intrusion "glorious."

60.     On July 16, 2022, Defendant posted an image and wrote "Yes.  Friends girlfriend.  Had to make her come over and change in my bathroom.  Put my phone in there to catch those tits.  Wish phones were better at the time, iPhone 4 days, but was glorious nonetheless."



61.     Plaintiff further discovered evidence that he was continuing to share the videos for which he had been criminally charged, posting a still from a video and writing "If anyone wants more or is willing to tribute anything I post email me grocermcgill at gmail  I won't post more of her here[.]"

62.     Upon information and belief, the term "tribute" means "the practice of ejaculating on a sexually explicit photo, taking a photo of the printed page or device adorned in ejaculate, and sending it back to the subject of the photo.[1]"

<hr>

[1]

https://journals.sagepub.com/doi/full/10.1177/2056305120905644#:~:text=Tributing%20is%20the%20practice%20 of%20ejaculating%20on%20a%20sexually%20explicit,the%20subject%20of%20the%20photo.



63.     Defendant even created an "Ask Me Anything" post online in 2016, posting "Ask a 24 year old sex offender anything.  Used to post the stuff I got caught for on /b, but got caught on another site."

64.     When a participant asked "What grade were the images?"  Defendant replied "…One was an F3 other was an M2.  Criminal use of a communications facility and invasion of privacy I had my phone hidden in my bathroom and made some vids while female friends were changing, so not really something I could roleplay[.]"

65.     Defendant further posted "I uploaded them to hamster and someone recognized one of the girls.  That led to the others being contacted and eventually it made national and international news…some bullshit[.]"  Shamelessly, he also indicated "You may have seen them. Here's screens of two of the three" posting screenshots of the videos he had recorded of the young women.

14

66.     When asked how the sex offender label had impacted him, Defendant wrote:

Less than I expected honestly.  It affects me mentally and how much I put myself out there, I'm still very close with my family, but I haven't heard from anyone I went to school with in 4 years…I haven't struggled to find work surprisingly.  Worked retail for the last year, and am going to be working at a property management company starting soon.  Honestly being attractive now has made a huge difference I think.  People don't ask questions, and I'm really good at talking to people now.  I also have a pretty hot girlfriend of a year and really love her, and she's incredibly supportive.

67.     Defendant additionally indicated that he had gone to "court ordered therapy" following his arrest and provided his grocermcgill@gmail.com e-mail address for those who wanted links to the videos he had posted leading to his arrest.

**Plaintiff Finds More and More People Connected to Defendant on the Same Site**

68.     In the course of protecting herself, Plaintiff also came to discover that she and the young women in Switzerland were not Defendant's only victims.

69.     First it was a co-worker from 2016.  Next it was his former hook up.  Then his ex-wife and mother of his young daughter.  Then his co-worker's wife.  After that, his ex-wife's friend.  And finally, his then-current partner and Plaintiff's once close friend, T.I.

70.     Disturbingly, one of Defendant's posts of T.I. indicated that they were asleep when the images – which depicted T.I. being genitally penetrated by Jones – were captured and indicated that T.I. was "extremely effected by melatonin" so he had "dos[ed] her about an hour before we start, and halfway through the night to keep her drowsy and disoriented."  The post further stated that "if she tries to stop me, she'll be punished by being made to choke on my cock, before I cum inside her again.  She doesn't get to decide how her body is used."

71.     Defendant wrote that he planned to take Adderall before he started to "stay awake and focused on using her" and sought tips for "ways to use her, recs for staying hard. Considering some supplements to raise libido…"

**Plaintiff's Gathering of Electronic Evidence**

72.     Plaintiff, who initiated a lawsuit against the Instagram account on December 19, 2023, has been subpoenaing 4Chan, Instagram, and other tech companies since the harassment began.

73.     Plaintiff's subpoenas have conclusively tied the @paladopoliz Instagram account with Defendant's Ask Me Anything post about being a sex offender.

74.     Additionally, not only has 4Chan provided Plaintiff with the I.P. addresses responsible for posting her content, they also provided her with references to all of the other posts Defendant made on 4Chan from February 2024 until March 2024.

75.     The production paints a damning and jaw-dropping picture of Defendant's insatiable appetite for destroying the lives of these eleven women.

**Defendant's Devices Are Seized**

76.     On or about March 7, 2024, Tyler Jones' electronic devices were seized by the police.

77.     Following seizure of his devices, Jones confessed to his then-partner, T.I., that he had done exactly what Plaintiff had said.

78.     Knowing Defendant did not have access to his devices that night provided Plaintiff with better sleep than she had experienced in months.

79.     Unfortunately for Plaintiff, while Defendant is no longer reposting her images on a near-daily basis, her images continue to be reposted by individuals who saved them during Defendant's two-year posting spree.

80.     In the eight months since Defendant's arrest, she has been contacted no fewer than 10 times by individuals indicating they have seen her online or otherwise attempting to strike up a lewd conversation with her.

**Plaintiff is Forever Changed**

81.     Plaintiff's life has been devastated by Defendant's intrusion and callous disregard for her privacy.

82.     By blanketing the internet with Plaintiff's intimate content, Defendant has sealed Plaintiff's online footprint forever.  She will never again know a day where her body is hers and hers alone.  Defendant stole her privacy and stole her autonomy.

83.     Once a woman who hosted a Syrian refugee in need of lodging, she no longer fees safe at the gym, the grocery store, or even her own home.

84.     Plaintiff leased a new car for fear that Defendant or someone with whom he had interacted would be able to track her down while driving her previous vehicle.

85.     Plaintiff begged the Glassboro Police Department to scan her home for bugs and secret cameras based on her understandable fear that Defendant had placed secret cameras in her home just as he had done to the young women undressing in his bathroom.

86.     On one occasion, Plaintiff got into a verbal altercation with a man who she felt was recording her while at a grocery store.  It was at that point when she realized that therapy

alone was not enough and asked for a prescription to ease the anxiety and paranoia she was experiencing due to Defendant's violations.

87.     When selected by a radio station to meet one of her favorite musicians in New York City, she nearly declined to attend because the idea of being surrounded by so many people who may have seen Defendant's postings seemed too overwhelming.

88.     Plaintiff has lost countless nights of sleep searching the internet for her images, cataloguing them, and advocating for their removal.  Even on nights new posts were not made, Plaintiff experienced difficulty sleeping fearing that she had simply not found that night's round of images and would soon receive an influx of social media requests from individuals who had seen her intimate content online.

89.     Plaintiff operates a successful photography business which she runs under her own name.  That business has now been publicized alongside naked and intimate images of her body, resulting calls from individuals are interested in her intimate images, not her photography skills.  As a result, Plaintiff has grown fearful of answering her phone and returning phone calls.

90.     For instance, on or about March 4, 2024, a man text messaged her asking her to call him and indicating that it was "moderately urgent[.]"

91.     Upon information and belief the phone number belonged to Stanley Grube, a man from Mechanicsburg who, in 2015, pleaded guilty to child welfare endangerment and reckless endangerment in connection with locking his ex-girlfriend's children in their bedrooms without access to food or bathrooms for days at a time.

92.     Now that these sorts of individuals have seen Plaintiff naked, have been given a direct line to Plaintiff via her cell phone number, and even know where she works, Plaintiff finds herself being hyper-vigilant in all aspects of life.

93.     Meeting with potential new clients, accepting phone calls from unknown numbers, and even answering the door now comes with a threat response Plaintiff never previously experienced.

94.     Once outgoing and fearless, she finds herself experiencing fear and distrust in situations she would have previously regarded as unremarkable.  Even an innocuous visit to the gym, for example, brings Plaintiff anxiety as she is fearful to change in front of strangers and worries she is being watched or photographed.

95.     Defendant's betrayal has further caused Plaintiff to second guess long-term friendships and question her instincts in who she trusts.

96.     Now in a healthy and happy relationship, she finds herself consumed with self-doubt and fighting intrusive thoughts that this man, too, cannot be trusted and will inevitably deceive and hurt her.

97.     Plaintiff has received mental health treatment and was diagnosed with Post Traumatic Stress Disorder.

**FIRST CAUSE OF ACTION**
**(Violation of 15 USC § 6851)**

98.     Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

99.     Defendant Jones disclosed the image of Plaintiff using his cell phone/computer.

100.    Defendant Jones did not obtain Plaintiff's consent to disclose the image.

101.    Defendant Jones knew that Plaintiff did not consent to the disclosure of the content online.

102.    As a result of Defendant Jones's conduct, Plaintiff has been damaged.

103.     Plaintiff demands judgment for any actual damages which exceed the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, but not less than $150,000.00, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation, injunctive relief preventing Defendant Jones from disseminating the images, and such other relief as the Court deems equitable and just.

**SECOND CAUSE OF ACTION**
**<u>(Intentional or Reckless Infliction of Emotional Distress)</u>**

104.     Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

105.     Defendant Jones has engaged in the intentional, extreme, and outrageous conduct of possessing and disseminating Plaintiff's nude photograph without her permission and consent.

106.     Defendant Jones has further held himself out as a friend and confidante only while knowing he is responsible for the pain she has been forced to suffer.

107.     Defendant Jones engaged in such behavior knowing that her decision to do so would have irreversible, lifelong consequences for Plaintiff and her mental well-being.

108.     Defendant Jones's conduct was so extreme in degree and so outrageous in character that it goes beyond all possible bounds of decency.

109.     Defendant Jones's sole purpose in sharing the images was to harass and/or embarrass Plaintiff and cause her harm.

110.     Defendant Jones intended to cause severe emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress.  Such outrageous behavior is beyond the limits of decency and is intolerable in a civilized society.

111.    As a direct and proximate result of Defendant Jones's conduct, Plaintiff suffered severe emotional distress.

112.    Defendant Jones acted with the intent to cause severe emotional distress, or alternatively, disregarded the substantial probability that his actions would cause severe emotional distress.

113.    Here, the acts of Defendant Jones were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that her actions would harm Plaintiff's reputation and mental well-being, that, in addition to all the damages inflicted upon Plaintiff and in addition to all the measure of relief to which Plaintiff may properly be entitled herein, Defendant Jones should also be required to pay punitive damages to punish him for her reckless conduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter her and others similarly situated from engaging in such conduct in the future.

114.    Plaintiff demands judgment against Defendant Jones in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant Jones for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### THIRD CAUSE OF ACTION
### (Violation of N.J.S.A. 2A:58D-1)

115.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

116.    New Jersey Statute 2A:58D-1 states:

a. An actor who, in violation of section 1 of P.L.2003, c. 206 (C.2C:14-9), photographs, films, videotapes, records, or otherwise reproduces in any manner, the image of another person who is engaged in an act of sexual penetration or sexual contact, the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court.

b. An actor who, in violation of section 1 of P.L.2003, c. 206 (C.2C:14-9), discloses any photograph, film, videotape, recording or any other reproduction of the image of another person who is engaged in an act of sexual penetration or sexual contact, the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court. For purposes of this section: (1) "disclose" means sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, publish, distribute, circulate, disseminate, present, exhibit, advertise , offer, share, or make available via the Internet or by any other means, whether for pecuniary gain or not; and (2) "intimate parts" has the meaning ascribed to it in N.J.S.2C:14-1.

c. The court may award:
(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
(2) punitive damages upon proof of willful or reckless disregard of the law;
(3) reasonable attorney's fees and other litigation costs reasonably incurred; and
(4) such other preliminary and equitable relief as the court determines to be appropriate.

A conviction of a violation of section 1 of P.L.2003, c. 206 (C.2C:14-9) shall not be a prerequisite for a civil action brought pursuant to this section.

117.    The photograph mentioned above depicts Plaintiff's exposed intimate parts, namely her breasts and genitals and shows her engaging in sexual penetration or sexual contact.

118.    Defendant Jones distributed the picture without Plaintiff's permission or consent.

119.    Defendant Jones has violated New Jersey Statute 2A:58D-1.

120.    As a result of Defendant Jones's actions, the Plaintiff demands judgment for any actual damages which exceeds the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and

punitive damages, attorney's fees, costs of this litigation and such other relief as the Court deems equitable and just.

## FIFTH CAUSE OF ACTION
### (Invasion of Privacy: Publicity Given to Private Life)

121.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

122.    By recording Plaintiff without her permission and consent and publishing the pictures online, Defendant intruded on Plaintiff's physical solitude and seclusion.

123.    The images depicting Plaintiff's exposed breasts and genitals constitute a public disclosure of private facts.

124.    It is clear that Defendant Jones has publicly disclosed private facts by uploading Plaintiff's intimate content on a publicly accessible website.

125.    The matter being publicized by Defendant Jones – namely Plaintiff's intimate images – would be highly offensive to a reasonable person and is not of legitimate concern to the public.

126.    Defendant violated Plaintiff's New Jersey constitutional right of privacy, in particular, Plaintiff's rights against public disclosure of private facts (e.g., making public private information about plaintiff) and right to solitude, seclusion, or private affairs and concerns.

127.    Defendant Jones intruded upon and violated the privacy of the Plaintiff knowingly, recklessly, and with malice aforethought when, without Plaintiff's knowledge and consent, he disseminated Plaintiff's highly intimate images.

128.    By distributing the picture, Defendant Jones sought to embarrass and humiliate the Plaintiff and such embarrassment and humiliation was reasonably foreseeable.

129.     Defendant Jones also sought to harm the reputation of the Plaintiff and such harm from his actions was reasonably foreseeable.

130.     As a proximate and direct cause of Defendant Jones's actions which violated Plaintiff's rights of privacy, the Plaintiff suffered emotional distress, pain and suffering, and a harm to her reputation.

131.     As a result of Defendant Jones's actions, Plaintiff demands judgment for any actual damages which exceeds the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation, and such other relief as the Court deems equitable and just.


## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A.     An award of damages against Defendant Jones in an amount to be determined at trial, but not less than $150,000.00 per intimate image shared, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

B.     An injunction and order permanently restraining Defendant Jones from disseminating Plaintiff's intimate images without her permission or consent;

C.     An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

D.     Prejudgment interest on all amounts due;

E.      An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F.      Such other and further relief as the Court may deem just and proper.


Dated:  New York, New York
        August 2, 2024

                                        Respectfully submitted,

                                        **Daniel Szalkiewicz & Associates, P.C.**
                                        */s/ Daniel Szalkiewicz*
                                        _____
                                        By:     Daniel S. Szalkiewicz, Esq.
                                        23 West 73rd Street, Suite 102
                                        New York, NY 10023
                                        Telephone: (212) 706-1007
                                        Facsimile: (646) 849-0033
                                        daniel@lawdss.com
                                        *Attorneys for Plaintiff*