UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

J.G.

           Plaintiff,

      v.

Tyler Jones a/k/a Tyler John Jones,

           Defendant.

Case Action No. 24-cv-08232

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO ENTER A DEFAULT
JUDGMENT AND TO SET THE MATTER DOWN FOR AN INQUEST ON DAMAGES**

Daniel Szalkiewicz, Esq.
Daniel Szalkiewicz & Associates, PC
23 West 73rd Street, Suite 102
New York, NY 10023
(212) 706-1007
daniel@lawdss.com
*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................... 2

PRELIMINARY STATEMENT & FACTUAL BACKGROUND .................................. 5

ARGUMENT A DEFAULT JUDGMENT SHOULD BE ENTERED ......................... 6

    A.   Proof of Service ............................................................................................ 7

    B.   Evidence of Jurisdiction .............................................................................. 7

    C.   Plaintiff has Properly Pleaded Several Causes of Action ............................ 7

        1.   Plaintiff has Pleaded that Jones Violated Federal Law ................................ 8

        2.   Plaintiff has Properly Pleaded that Jones Intentionally or Recklessly Inflicted Emotional Distress .................................................................................... 9

        3.   Plaintiff has Pleaded a Cause of Action for Violation of N.J.S.A. 2A:58D-1 .............. 12

        4.   Plaintiff has Pleaded a Cause of Action for Invasion of Privacy ................................ 14

    D.   The Default Judgment Factors Weigh in Favor of the Judgment .................... 16

CONCLUSION ............................................................................................................ 17

## **TABLE OF AUTHORITIES**

**Cases**

*Aly v. Garcia*, 333 N.J. Super. 195 (App. Div. 2000) .................................................. 12

*Borecki v. E. Int'l Mgmt. Corp.*, 694 F. Supp. 47 (D.N.J. 1988) ................................ 10

*Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355 (1988) ...................................... 9, 10

*Caputzal v. Lindsay Co*., 48 N.J. 69 (1966) ............................................................... 11

*Del Mastro v. Grimado*, 2010 N.J. Super. Unpub. LEXIS 2315 ................................ 11

*Hill v. New Jersey Dep't of Corr. Com'r Fauver*, 342 N.J. Super. 273, 297 [App. Div. 2001)... 10

*Romaine v Kallinger*, 109 NJ 282, 297, 537 A2d 284, 292 (1988) ....................... 15, 16

*Rumbauskas v Cantor*, 138 NJ 173, 180, 649 A2d 853, 856 [1994] .......................... 15

*S.S. v. Collins*, Civil Action No. 23-0892 (KMW-AMD), 2024 U.S. Dist. LEXIS 135664, at *5 (D.N.J. July 31, 2024) .......................................................................... 6, 7, 8

*Smith v Datla*, 451 NJ Super 82, 95, 164 A3d 1110, 1118 (Super Ct App Div 2017) ................ 15

*State v. Chow*, No. A-0429-18T3, 2019 N.J. Super. Unpub. LEXIS 983 (App. Div. Apr. 30, 2019) ....................................................................................... 13, 14

*Taylor v. Metzger*, 152 <u>N.J.</u> 490, 509 [1998] .............................................. 10

*Turner v. Wong*, 363 N.J. Super. 186, 200 (App. Div. 2003) .................................... 12

*W. Trenton Hardware, LLC v. Brook. Textiles, LLC*, Civil Action No. 21-17662 (GC) (TJB), 2024 U.S. Dist. LEXIS 171030, at *15 (D.N.J. Sep. 23, 2024) ............................. 16

*Ward v Barnes*, 545 F Supp 2d 400, 414 [DNJ 2008]) ............................................... 9

*Wilson v Grant*, 297 NJ Super 128, 141, 687 A2d 1009, 1016 (Super Ct App Div 1996) ........... 16

*Wilton Reassurance Life Co. of N.Y. v. Engelhardt,* Civil Action No. 21-9968, 2023 U.S. Dist. LEXIS 131827, at *4 (D.N.J. July 31, 2023) ......................................... 6, 17

**Statutes**

*15 U.S.C. § 6851(a)(5)* ............................................................................................ 8

*15 U.S.C. § 6851(b)(1)(A)* ....................................................................................... 8

*18 U.S.C. § 2256(2)(A)-(B)* ..................................................................................... 8

*Fed. R. Civ. PP. 55(b)(2)* .......................................................................................... 6

Plaintiff J.G. ("Plaintiff"), by her attorneys, Daniel Szalkiewicz & Associates, P.C., respectfully submits this Memorandum of Law in support of Plaintiff's Motion to enter a default judgment against defendant Tyler Jones a/k/a Tyler John Jones ("Defendant" or "Jones") and set this matter down for an inquest pursuant to Rules 37 and 55 of the Federal Rules of Civil Procedure ("FRCP").

## **PRELIMINARY STATEMENT & FACTUAL BACKGROUND**

In November 2022, Defendant Jones asked to borrow Plaintiff's phone and, without her knowledge, located her intimate content, photographed it with his phone, and returned the phone to Plaintiff. Once home, Defendant posted Plaintiff's stolen intimate images online and continued to do so on a near-nightly basis for more than a year.

Defendant routinely uploaded Plaintiff's intimate images on 4Chan alongside identifying information about Plaintiff, including her name, workplace, and hobbies which allowed countless third parties to locate Plaintiff and contact her in relation to the images. Over the course of many months, Defendant uploaded Plaintiff's intimate content online more than 100 times.

Worse yet, Plaintiff was just one of many women Jones has victimized in such a manner over the years. In fact, a simple Google search reveals that Jones pleaded guilty to charges of invasion of privacy and disseminating child pornography in 2013 after he secretly videotaped three females – including at least one minor – and uploaded the recordings onto pornographic websites.

On or about March 7, 2024, Jones' devices were seized by the New Jersey State police. Later that same day, Defendant confessed to his partner, Plaintiff's friend, what he had done to Plaintiff.

Defendant's dissemination of Plaintiff's intimate content was so prolific that Plaintiff will never be able to scrub the internet of her naked body. Defendant's actions have caused Plaintiff unimaginable levels of emotional distress and have irretrievably destroyed her sense of safety and privacy. Rather than face the consequences of his actions, Defendant has chosen to default and a judgment should now be entered in Plaintiff's favor.

**ARGUMENT**

**A DEFAULT JUDGMENT SHOULD BE ENTERED**

Fed. R. Civ. PP. 55(b)(2) "empowers the Court . . . to enter a default judgment against a defendant that has failed to plead or otherwise defend against a claim for affirmative relief." Prior to entering a default, the Court must determine (1) whether the party seeking default judgment produced sufficient proof of valid service and evidence of jurisdiction, and (2) whether the unchallenged facts present a sufficient cause of action." *Wilton Reassurance Life Co. of N.Y. v. Engelhardt,* Civil Action No. 21-9968, 2023 U.S. Dist. LEXIS 131827, at *4 (D.N.J. July 31, 2023). Additionally, "in determining whether default judgment is proper, the Court weighs three factors: (1) prejudice to the party seeking default judgment if default is denied; (2) whether the party subject to default appears to have a meritorious defense; and (3) the culpability of the party subject to default." *Id.*

"Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *S.S. v. Collins*, Civil Action No. 23-0892 (KMW-AMD), 2024 U.S. Dist. LEXIS 135664, at *5 (D.N.J. July 31, 2024).

It is respectfully submitted that a default judgment is warranted in the instant action.

### A. Proof of Service

Defendant was personally served with a copy of the summons and complaint on November 20, 2024. Since then, neither Defendant nor an attorney acting on his behalf has contacted our office or uploaded anything on the docket contesting service or the jurisdiction of this Court.

### B. Evidence of Jurisdiction

Jurisdiction in the federal court is appropriate based on diversity jurisdiction because the amount in controversy in this case exceeds $75,000 and there is a complete diversity of citizenship as Plaintiff is a citizen of New Jersey and Defendant resides in the State of Pennsylvania. Additionally, jurisdiction in the United States District Court District of New Jersey is appropriate because of Defendant's contacts with New Jersey, specifically because he directed his activities at a New Jersey resident when he entered New Jersey, stole the images from Plaintiff's phone, and then uploaded her intimate images online. *See S.S., supra* ("Plaintiff asserts that jurisdiction in this District 'is appropriate because of Defendant's contacts with New Jersey, specifically because he persistently directed his activities at New Jersey residents, including Plaintiff and individuals who associate with Plaintiff through her work at a New Jersey school and through her New Jersey business… [b]ecause Plaintiff's claims arise out of Defendant's activities, this Court's exercise of specific jurisdiction over Defendant is reasonable and fair ").

### C. Plaintiff has Properly Pleaded Several Causes of Action

Plaintiff's Complaint properly plead four causes of action for the nonconsensual dissemination of her intimate content under state and federal law.

### 1. Plaintiff has Pleaded that Jones Violated Federal Law

Plaintiff has a cause of action pursuant to 15 U.S.C. §6851 because she is:

> an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure…

As detailed in the Civil Action Relating to Disclosure of Intimate Images ("CARDII"), an "intimate visual depiction" is any photo, video, or other visual image, that depicts, (1) the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual or (2) the display or transfer of bodily sexual fluids, including an identifiable individual engaging in "sexually explicit conduct." *15 U.S.C. § 6851(a)(5)(A)*. "Sexually explicit conduct" includes "graphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person." *18 U.S.C. § 2256(2)(A)-(B)*. The complaint alleges:

> Plaintiff searched the internet for the images received by her friend and was devastated to see dozens – if not hundreds – of images of herself online, the vast majority of which showed her in her underwear or partially or completely naked.
> Docket No. 1, ¶30.

Plaintiff also alleges that "Defendant Jones has engaged in the intentional, extreme, and outrageous conduct of possessing and disseminating Plaintiff's nude photograph without her permission and consent."

Plaintiff has therefore sufficiently alleged the first element of CARDII. Next, a plaintiff must allege the defendant "disclosed" the "intimate visual depiction. *See S.S., supra*. To satisfy this element, the disclosure must be "in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce." *15 U.S.C. § 6851(b)(1)(A)*. The Complaint alleges "Defendant Jones disclosed the image of Plaintiff using his cell phone/computer"

(Docket No. 1, ¶99) and published the images online. Docket No. 1, ¶122.  Posting images online "constitutes transportation in interstate commerce." *S.S., supra.*

The last element is consent.  As detailed in the attached declaration of Plaintiff, she never gave Defendant permission to share her intimate images and, despite this, he did so on multiple occasions.

2.  **Plaintiff has Properly Pleaded that Jones Intentionally or Recklessly Inflicted Emotional Distress**

When establishing a claim for intentional infliction of emotional distress, a plaintiff must prove "intentional and outrageous conduct by the Defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355 (1988).

a.  **Plaintiff has Pleaded Defendant's Conduct Was Intentional and/or Reckless**

The first element requires a Plaintiff to plead that the Defendant acted either intentionally or recklessly.  The courts have established a two-part test, whereby "for an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress conduct." *Ward v Barnes*, 545 F Supp 2d 400, 414 [DNJ 2008]) (finding "liability may also attach to a reckless act 'when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow'").

Here, the Complaint alleges that Jones intended to share Plaintiff's intimate images online and did share her images online "to harass and/or embarrass Plaintiff and cause her harm." Docket No. 1, ¶109.  The Complaint further alleges that "Defendant Jones intended to cause severe emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress." Docket No. 1, ¶110.

### b. Extreme and Outrageous Conduct

The second element of intentional infliction of emotional distress is that the conduct "be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community". *Buckley*, *supra*, at 366.

Examples of extreme and outrageous conduct include a racial slur uttered by a sheriff directed against a subordinate officer (*see Taylor v. Metzger*, 152 N.J. 490 (1998) ["racial insults, relying as they do on the unalterable fact of the victim's race and on the history of slavery and race discrimination in this country, have an even greater potential for harm than other insults"]), backing a plaintiff into a corner and stating "are you still pissed at me ... [b]ecause if you are I am going to have to stare in them big blue eyes and pat those white titties," while simultaneously stroking plaintiff's breast in a sexual manner (*see Flizack v. Good News Home for Women, Inc*., 346 N.J. Super. 150 [App. Div. 2001]), and the filing of false sexual harassment charges against a superintendent (*see Hill v. N.J. Dep't of Corr. Com'r Fauver,* 342 N.J. Super. 273 [App. Div. 2001]).

The conduct is generally deemed outrageous when "the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Borecki v. E. Int'l Mgmt. Corp.*, 694 F. Supp. 47 (D.N.J. 1988).

The Complaint pleads outrageous conduct by the Defendant. From the time Jones stole Plaintiff's phone until December 28, 2023, Jones posted at least 169 different images of Plaintiff online. Defendant would share Plaintiff's images on forums such as "shouldn't share[,]" "stole nudes?[,]" "Clothes pics of girls you have nudes of[,]" "Tit Rating[,]" "Girls you know that don't know you have their nudes[,]" and "Stolen Nude thread[.]" Jones decided his goal was to

"expose[]" Plaintiff, and created a group entitle group "[Plaintiff's Employer] University Professor Exposed" and invited people to join him in harassing Plaintiff as a group. Docket No. 1, ¶¶42, 44.

Worse yet, once Jones became aware that Plaintiff's learned her images were being spread online, and the level of fear and anxiety she was suffering, he only intensified his harassment.

While it is difficult to find a culprit whose postings were as pervasive and obsessive as Jones', New Jersey courts have found actions similar to those undertaken by Defendant to amount to the intentional infliction of emotional distress.  In *Del Mastro v. Grimado*, for instance, the court held that the defendant's nonconsensual mailing of Christmas cards containing intimate images of plaintiff to plaintiff's family, friends, neighbors, and clients amounted to intentional infliction of emotional distress and invasion of privacy. *Del Mastro v. Grimado*, 2010 N.J. Super. Unpub. LEXIS 2315.  As such, Plaintiff has properly pleaded extreme and outrageous conduct.

### c.  Proximate Cause

The third element requires that the Defendant's actions are the proximate cause of Plaintiff's emotional distress.  *Buckley, supra,* at 366.  The determination of proximate cause is based upon "mixed considerations of logic, common sense, justice, policy, and precedent." *Caputzal v. Lindsay Co*., 48 N.J. 69 (1966).

Plaintiff has pleaded that "as a direct and proximate result of Defendant Jones's conduct, Plaintiff suffered severe emotional distress[.]" Docket No. 1, ¶111.

### d. Severe Distress

The fourth element requires that the emotional distress is "so severe that no reasonable person could be expected to endure it." *Buckley, supra*, at 366. "Severe emotional distress is a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by trained professionals." *Turner v. Wong*, 363 N.J. Super. 186 (App. Div. 2003). Thus the emotional distress must result in either "physical illness or serious psychological sequelae." *Aly v. Garcia*, 333 N.J. Super. 195 (App. Div. 2000).

Plaintiff has pleaded her damages go beyond mere embarrassment. The Complaint detailed the pain and anguish she has experienced following Defendant's theft and dissemination of her images and his subsequent conduct. Docket No.1 ¶81- 97. The declaration submitted in support of Plaintiff further details the emotional devastation she has faced due to Defendant's actions. Plaintiff sold her car for fear she was too identifiable, she avoids changing at the gym due to concern for her privacy, she has had her home swept for hidden cameras, and even once confronted a man at a grocery store when she felt he was recording her. Docket No. 2-1, ¶¶8-10. Communications from individuals who have seen her content online and seek to contact her have further caused her to hide from unknown numbers, despite her need to answer them to further her work as a photographer. Docket No. 2-1, ¶10.

As such, Defendant has properly pleaded a cause of action for intentional and reckless infliction of emotional distress.

### 3. Plaintiff has Pleaded a Cause of Action for Violation of N.J.S.A. 2A:58D-1.

Pursuant to New Jersey Statute 2A:58D-1:

> b. An actor who, in violation of section 1 of P.L.2003, c. 206 (C.2C:14-9), discloses any photograph, film, videotape, recording or any other reproduction of the image of another person who is engaged in an act of

sexual penetration or sexual contact, the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court. For purposes of this section: (1) "disclose" means sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, publish, distribute, circulate, disseminate, present, exhibit, advertise , offer, share, or make available via the Internet or by any other means, whether for pecuniary gain or not; and (2) "intimate parts" has the meaning ascribed to it in N.J.S.2C:14-1.

Pursuant to section 1(c) of P.L. 2003, c. 2006 (c.2C:14-9),

an actor commits a crime of the third degree if, knowing that he is not licensed or privileged to do so, he discloses any photograph, film, videotape, recording or any other reproduction of the image of another person whose intimate parts are exposed or who is engaged in an act of sexual penetration or sexual contact, unless that person has consented to such disclosure. For purposes of this subsection, "disclose" means sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer. Notwithstanding the provisions of subsection b. of N.J.S.2C:43-3, a fine not to exceed $ 30,000 may be imposed for a violation of this subsection. 2003 N.J. ALS 206, 2003 N.J. Laws 206, 2003 N.J. Ch. 206, 2002 N.J. S.N. 2366

New Jersey law allows a court to award actual damages ("not less than liquidated damages computed at the rate of $1,000 for each violation of this act"), punitive damages if the act was willful or in reckless disregard of the law, attorneys fees and costs, and other preliminary and equitable relief as deemed appropriate by the court.

In *State v. Chow,* the parties were engaged in a one-week relationship during which time "M.M." sent defendant Chow "several nude photographs" which M.M. later discovered on the internet attached to defendant's username. *State v. Chow*, No. A-0429-18T3, 2019 N.J. Super. Unpub. LEXIS 983 (App. Div. Apr. 30, 2019). The Superior Court Appellate Division has held that, while the term "revenge porn" is often used to describe the offense committed by Defendant, "[r]evenge is not an element of the charged offense":

The State characterizes defendant's alleged actions as "revenge porn" and provides several citations defining the term "as nonconsensual

> pornography: the distribution of sexually graphic images of individuals without their consent," (quoting *Patel v. Hussain*, 485 S.W. 3d 153, 157 n.1 (Tex. App. 2016)). Revenge is not an element of the charged offense but describes the act of posting an ex-romantic partner's nude photographs on the Internet in retaliation. For purposes of the crime charged, invasion of privacy, what matters is the victim's lack of consent.
> *Id*.

Plaintiff has pleaded that the disclosed images are covered images depicting J.G. New Jersey law proscribes the nonconsensual disclosure of images of another whose "intimate parts are exposed or who is engaged in an act of sexual penetration or sexual contact." N.J.S.2C:14-1 defines "intimate parts" as "the following body parts: sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person." The same section defines "sexual contact" as "an intentional touching by the victim or actor…of the victim's or actor's intimate parts for the purpose of…sexually arousing or sexually gratifying the actor…". Here, the Plaintiff has pleaded that Defendant shared naked images of her, which included intimate parts.

Plaintiff has further pleaded that Defendant disclosed the images despite knowing he was not licensed to do it. New Jersey law provides that "an actor commits a crime of the third degree if, knowing that he is not licensed or privileged to do so" he or she disseminates the intimate content. Defendant's admissions online show that not only did he steal the images from Plaintiff's phone but also that he knew he should not be posting them online.

### 4. Plaintiff has Pleaded a Cause of Action for Invasion of Privacy.

Finally, Plaintiff has properly pleaded a cause of action for invasions of privacy. New Jersey's invasion of privacy law

> is not one tort, but a complex of four. The law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing

in common except that each represents an interference with the right of the
plaintiff to 'be left alone.'
*Smith v Datla*, 451 NJ Super 82, 95, 164 A3d 1110, 1118 (Super Ct App Div
2017).

The four New Jersey causes of action are:

> (1) intrusion (e.g., intrusion on plaintiff's physical solitude or seclusion, as
> by invading his or her home, illegally searching, eavesdropping, or prying
> into personal affairs); (2) public disclosure of private facts (e.g., making
> public private information about plaintiff); (3) placing plaintiff in a false
> light in the public eye (which need not be defamatory, but must be
> something that would be objectionable to the ordinary reasonable person);
> and (4) appropriation, for the defendant's benefit, of the plaintiff's name or
> likeness.
> *Rumbauskas v Cantor*, 138 NJ 173, 180, 649 A2d 853, 856 (1994).

The privacy tort that applies in this matter is public disclosure of private facts.  Invasion
of privacy for the public disclosure of privacy facts occurs when "the matters revealed were
actually private, that dissemination of such facts would be offensive to a reasonable person, and
that there is no legitimate interest of the public in being apprised of the facts publicized."
*Romaine v Kallinger*, 109 NJ 282, 297, 537 A2d 284, 292 (1988).

Because the tort "permits recovery for truthful disclosures[,]" New Jersey courts know it
"creates significant potential for conflict with the guarantees contained in the first amendment of
the Constitution". *Id*.  New Jersey recognizes the "newsworthiness" exception to the claim. *Id*.
When analyzing the tort, the court must first determine whether the facts were actually "private"
or had previously been disclosed in the public domain.  If they were in fact private, the court
must then determine whether the facts are "newsworthy" and thus a matter of legitimate public
concern. The Courts have stated:

> [t]he "newsworthiness" defense in privacy-invasion tort actions is available
> to bar recovery where the subject matter of the publication is one in which
> the public has a legitimate interest.  A publication is commonly understood
> to be "newsworthy" when it contains an "'indefinable quality of information'

that arouses the public's interest and attention." In such cases it is for the court to determine whether a matter is of legitimate public interest. *Romaine*, at 293 [internal citations omitted]. (Romaine, at 293 [internal citations omitted])

Finally, the courts:

> should balance the relative newsworthiness of the publication against its level of offensiveness and intrusiveness into private matters. The factors to be considered in the balance are: (1) the social value of the facts published; (2) the depth of the article's intrusion into ostensibly private affairs, and (3) the extent to which the party voluntarily acceded to a position of public notoriety. The assessment of public interest includes a determination whether the person voluntarily and knowingly engaged in conduct that one in his position should reasonably know would implicate a legitimate public interest, engendering the real possibility of public attention and scrutiny. *Wilson v Grant*, 297 NJ Super 128, 141, 687 A2d 1009, 1016 (Super Ct App Div 1996)(internal citations and quotations omitted).

Here, the Complaint properly pleads that "images depicting Plaintiff's exposed breasts and genitals constitute a public disclosure of private fact" and that the "matter being publicized by Defendant Jones – namely Plaintiff's intimate images – would be highly offensive to a reasonable person and is not of legitimate concern to the public. Docket No. 1, ¶¶123, 125.

As such, Plaintiff has pleaded invasions of privacy.

**D.    The Default Judgment Factors Weigh in Favor of the Judgment**

Defendant seems content to simply ignore and/or avoid this matter in perpetuity. Plaintiff is prejudiced by the continued delay in Defendant filing an answer.   More so, Defendant does not have a meritorious defense. "A meritorious defense is one which 'if established at trial, would completely bar a plaintiff's recovery.'"   *W. Trenton Hardware, LLC v. Brook. Textiles, LLC*, Civil Action No. 21-17662 (GC) (TJB), 2024 U.S. Dist. LEXIS 171030, at *15 (D.N.J. Sep. 23, 2024).  There is no evidence Defendant has presented in discovery, or could ever set forth at trial, that would show Plaintiff gave Defendant her consent to upload her intimate images

16

online. A defendant is presumed culpable where they have failed to answer, move, or otherwise respond." *Wilton Reassurance Life Co. of N.Y., supra.*

As such a default judgment should be entered against Jones and the matter should be set down for an inquest on damages.

## **CONCLUSION**

Whereas, a default should be entered, and this matter set down for an inquest on damages, together with such further and other relief this court deems just and proper.


Dated:        December 18, 2024
              New York, New York

                                        *Daniel S. Szalkiewicz, Esq.*
                                        Daniel S. Szalkiewicz, Esq.
                                        Cali P. Madia, Esq.