Daniel S. Szalkiewicz, Esq. (DS2323)
VERIDIAN LEGAL P.C.
23 WEST 73RD STREET
SUITE 102
NEW YORK, NEW YORK 10023
*Attorneys for the Plaintiff J.G.*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.G., | **MEMORANDUM OF LAW IN SUPPORT OF DAMAGES** |
| Plaintiff, | |
| v. | Case No. 24-cv-08232 |
| TYLER JONES a/k/a TYLER JOHN JONES, | |
| Defendant. | |

## I.        Preliminary Statement

As demonstrated in court, Tyler Jones a/k/a Tyler John Jones ("Jones" or "Defendant") asked to borrow Plaintiff J.G.'s phone for the purpose of covertly finding her intimate content. From there, Jones sent the content to himself and then repeatedly uploaded it onto the internet. Plaintiff J.G. ("Plaintiff") learned about Jones' violation when a friend was sent Plaintiff's intimate content by an Instagram account now known to belong to Jones. With further investigation, Plaintiff learned that Jones had uploaded her intimate content more than one hundred times over the course of more than a year.

In the weeks and months that followed, Plaintiff learned that Defendant had previously pleaded guilty to secretly filming three females – including a minor – and had continued to upload their content online years later. Plaintiff also began finding images of other individuals known by Defendant which had been uploaded online on the same spaces where Defendant had uploaded her content. As she awaited police intervention, Plaintiff was forced to monitor 4Chan daily to capture I.P. address information and advocate for content removal. Once Defendant learned Plaintiff suspected him, his posts grew increasingly identifying, including details like Plaintiff's full name, where she worked, what she did for a living, her age, her height, and her hobbies. More and more strangers began to contact Plaintiff directly, forcing Plaintiff to all but shutter her wedding and concert photography business which once provided her with a significant secondary source of income.

1

Plaintiff testified that she was able to confirm Defendant's responsibility for uploading her content at first due to context clues and text which accompanied the images and later through information provided by third parties.  More specifically, Plaintiff found an "Ask Me Anything" board on which Defendant described being wholly unfazed by his past arrest for similar conduct and provided his e-mail address to those who wanted to see the videos which led to his arrest.  The same e-mail was provided to Instagram by Defendant when he signed up for the account which he used to message Plaintiff's friends with her images.  Additionally, I.P. address information tied back to his home.

Plaintiff testified extensively about her mental health following Defendant's actions.  She recalled placing hammers at her home's entry points, purchasing a new car to preserve anonymity, aggressively pursuing a man she believed was photographing her in a grocery store, constantly feeling as though people were watching her, and stepping back from hobbies she once loved.  She further indicated that her career goals had changed, as she no longer felt comfortable with the public-facing nature of the music industry.  Plaintiff further indicated that she was now meeting with mental health providers, including both a therapist and a psychiatrist, and taking multiple drugs to combat her post traumatic stress disorder and anxiety diagnoses.

Plaintiff testified about the utter exhaustion she felt combatting Defendant's insatiable appetite for uploading the images.  She indicated that people who had seen her intimate images began to contact her through her public-facing photography business, including one man who claimed to want to hire her who turned out to have a criminal past.

Plaintiff's friend and mentor, Cristin Kastner Farney also testified about the deep changes she has seen in her friend since Defendant uploaded her content online.  Among other things, Farney spoke about her abandoned plans of beginning an artists' retreat with Plaintiff.

Finally, Defendant also testified.  Though he largely invoked his fifth amendment right with regard to the harms he caused Plaintiff, Defendant confirmed he had accepted a plea concerning the criminal charges against him in 2013 and that he had heard from those victims and understood the harms that are caused by nonconsensual sharing of intimate content.

## II.    Causes of Action Subject to the Hearing

Plaintiff's Complaint alleged four causes of action against Defendant, including 1) violation of 15 USC § 6851; 2) Intentional Infliction of Emotional Distress; 3) violation of N.J.S.A. 2A:58D-1; and 4) Invasion of Privacy; Publicity Given to Private Life.

The damages available under 15 U.S.C. § 6851 are:
1) the actual damages sustained by the individual or liquidated damages in the amount of $150,000
2) the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred; and
3) any other relief available at law

(15 USCS § 6851).

Pursuant to N.J.S.A. 2A:58D-1, the court may award:

(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
(2) punitive damages upon proof of willful or reckless disregard of the law;
(3) reasonable attorney's fees and other litigation costs reasonably incurred; and
(4) such other preliminary and equitable relief as the court determines to be appropriate.

Plaintiff requests actual damages, punitive damages, and reasonable attorney fees and the costs of litigation.

### III.    Recent Verdicts

Among Plaintiff's counsel's more recently resolved nonconsensual pornography cases is one which resulted in a **thirty-million-dollar verdict**.  In Cooper v. Broems, (153384/2018) a New York County jury awarded plaintiff $5,000,000 in past pain and suffering; $5,000,000 in future pain and suffering; $5,000,000 in punitive damages for defendant's violation of New York City's law against nonconsensual pornography; and $15,000,000 in punitive damages for defendant's intentional infliction of emotional distress upon Plaintiff (Exhibit 1).  Like in this case, the defendant in Cooper had distributed multiple intimate images of plaintiff online along with identifying information about her.  Similarly, as here, Broems had continued engaging in a harassing course of conduct even after plaintiff had made police reports relating to his past bad acts, demonstrating a complete disregard for the criminal justice system.  In fact, Plaintiff testified that once Jones learned she believed him to be the perpetrator and knew she was making police reports, Jones' uploads became more frequent and more identifying, including information such as her workplace, job details, hobbies, name, age, and side business.  Unlike in Cooper, Defendant had previously accepted a plea for similar claims years prior, demonstrating his understanding of the wrongfulness of his actions and decision to continue to engage in such behavior despite that knowledge.

In M.H. v. E.T., (161144/2020) a New York County Supreme Court judge awarded another nonconsensual pornography victim **$1,240,087.97**, representing $350,000 in compensatory damages for emotional distress, $646.05 in compensatory damages for past medical expenses; $110,000 in future medical expenses; $750,000 in punitive damages; and the remaining $29,441.92 for attorney and expert fees (Exhibit 2, Exhibit 3).  In M.H., the defendant shared plaintiff's intimate content with one person but primarily sent the content to plaintiff herself in order to belittle her and taunt her with the threat of further dissemination.  The defendant in M.H. declined to participate in the legal proceedings, forcing the matter to proceed to inquest.  Like here, the parties in M.H. had never dated or been romantically involved and the plaintiff had never sent the intimate content to defendant.

In October 2021 a federal court in Maryland awarded a nonconsensual pornography victim **$1,378,145.50**, representing $71,485 in compensatory damages for her past and future medical

3

expenses; $750,000 in compensatory damages for her emotional distress; $500,000 in punitive damages for defendant's conduct; $48,297 in attorney's fees; and $8,363.50 in expenses (Exhibit 4). The defendant in Wellein, like here, disseminated plaintiff's intimate images online and, after a certain point, declined to participate in legal proceedings.

In A.S. v. Tate, on January 31, 2024, a New Jersey court awarded a victim of sexual based image abuse **$4,928,559.91** in damages for sharing three images of the plaintiff online (Exhibit 5).

In J.M. v. Rozanov 2, on April 19, 2024, the Bronx County Supreme Court awarded Plaintiff **$3,000,000.00** for the dissemination of Plaintiff's images on the internet. (J.M. v Rozanov, ___ Misc 3d ___, 2024 NY Slip Op 24132, *3 [2024]) (Exhibit 6).

In J.M. v. Rozanov 1, on January 25, 2023, a New Jersey court awarded J.M. **$622,671.24** for the publication of an intimate video of her on the internet (Exhibit 7).

In the matter of Facey v. Thompson, Supreme Court, Nassau County, Index No. 604703/2021, on April 13, 2024, the plaintiff's attorney filed a list of nonconsensual pornography related verdicts which is attached to this memo (Exhibit 8). In that matter, on April 24, 2024, the plaintiff was awarded **$2,025,000.00** after a trial on damages (Exhibit 9).

## IV.    Damages Requested

J.G. is 29 years old and according to N.J. Rules APPENDIX I-A, her life expectancy is 50.9 years.

### A. Past and Future Medical Expenses

Plaintiff is currently receiving regular psychotherapy from Nadia Awais, LPC, LCADC and has been diagnosed with Post Traumatic Stress Disorder (F43.1) and Adjustment Disorder with Mixed Anxiety and Depressed Mood (F41.1). Plaintiff's therapist, in her clinical impression of Plaintiff, attributed Plaintiff's diagnoses to Defendant's dissemination of her intimate content. Plaintiff initially sought mental health treatment within ten days of learning her content was online and has received treatment weekly since that time, which she anticipates continuing on a weekly or bi-weekly basis indefinitely. With the insurance provided through her employer, Plaintiff pays $15.00 per visit. Without an insurance provider, the cost of services is $500.00 an hour. At 72 weeks of treatment as of May 15, 2025, Plaintiff has spent approximately $1,080 Plaintiff additionally treats with a psychiatrist – a co-pay of $30 per visit – every six weeks. Her relevant medications currently include Lamotrigine, Prazosin, and Buspirone which total approximately $65 per quarter after insurance. Due to the nature of the internet and the likelihood that her content will get re-uploaded online for the remainder of Plaintiff's life and beyond, Plaintiff cannot foresee a day when she will not require mental health treatment. At present, Plaintiff is just 29 years old.

i.    **Past Medical Expenses:**    $1,080.

ii.    **Future Medical Expenses**

See Life Expectancy Table canbe  found at
https://www.njcourts.gov/sites/default/files/attorneys/rules-of-court/appndx-i.pdf

Marisa is treating with a therapist once a month for an average cost of $161 an appointment.

| Years | Number of Visits | Costs for a Year with insurance | Cost for a year with insurance | Total cost without insurance | Total cost without insurance |
|-------|------------------|--------------------------------|-------------------------------|------------------------------|------------------------------|
| 1-50 | 26 per a year | $ 390.00 | $13,000 | $19,500 | $650,000 |

There is no guarantee J.G. will continue to be employed and be able to receive services with a $15.00 co pay.

### B. Compensatory Damages

Defendant's actions have interfered with Plaintiff's ability to enjoy life.  Defendant's behavior completely changed Plaintiff's relationship with the world.  Plaintiff has begun exhibiting anti-social tendencies, withdrawing from hobbies and passions which once brought her joy.  Though Plaintiff founded a femme motorcycle group, she no longer rides due to her fear of being identified on her motorcycle as Defendant uploaded images of it online.  Plaintiff further testified about the income she earned as a wedding photographer but stated that she no longer feels comfortable working in such a capacity due to the need to market herself online and concomitant fears that individuals who have seen her intimate content will send them to her clients.  Plaintiff further testified to struggling to attend concerts, go to the gym, teach, and even go to the grocery store due to her fear that individuals recognize her from images posted by Defendant.

### i.     Lost Wages

While Plaintiff once earned income photographing concerts and working security, her fear of being in the public eye has forced her to take a step back from such jobs.  Plaintiff testified that she typically earned approximately $50,000 from photography jobs.

Plaintiff testified that, while she had just been offered a job as an adjunct professor when she realized the images were online, she struggled to effectively teach due to intrusive thoughts about her students having seen her images online.  Plaintiff's compensation for teaching the class was $5,925.00 per semester, however, her school did not renew her contract.  Plaintiff attributes the school's decision not to renew her contract to her lackluster performance as a teacher to her fear her students recognized her and her preoccupation with monitoring the internet for new uploads and advocating for criminal charges against Defendant.  Accordingly, Plaintiff lost out on, at a minimum, $11,850.00 due to Defendant's conduct.

Plaintiff has also retreated from her long-held desire to begin an artist community retreat with her mentor and witness in this case, Cristin Kastner Farney.  Ms. Farney testified that the parties expected to earn $50,000 annually through this venture.

New Jersey District Courts have recently considered retirement age to be 65 years old (*see Phillips v Starbucks Corp*., 2023 US Dist LEXIS 143149, at *34 [DNJ Aug. 16, 2023, No. 19-19432]).

Assuming Plaintiff is to work another 35 years, because of the defendant's conduct, J.G. has lost $350,000 in lost wages between the missed joint venture and her inability to continue as a photographer.

**Lost wages: $350,000**

ii.    Pain and Suffering

Defendant's acts have forever shaped Plaintiff's relationship with her loved ones as well as strangers. Plaintiff will never know how many people have viewed her in an intimate position either because of Defendant's online postings or because Defendant himself has sent his intimate content to them. Plaintiff has a legitimate reason to have such fears – she knows Defendant contacted no fewer than two people with her content and is aware of at least one acquaintance who stumbled upon her images naturally.

Plaintiff's spirit has also been broken by Defendant. Ms. Farney testified that Plaintiff had lost what was once the defining light in her eyes. Ms. Farney further indicated that Plaintiff had gone from being a near-constant presence in her and her son's life to seeing her in only limited circumstances. Though Plaintiff once took great pleasure in hosting parties at her home, she no longer does so, fearful of allowing even those closest to her into her home.

Because of this, and for all the reasons Plaintiff described during the inquest, Plaintiff is requesting $1,000,000 for past pain and suffering and $2,000,000 for future pain and suffering.

**C. Punitive Damages**

While Defendant has refused to participate in this litigation, his conduct was inarguably malicious and oppressive or, at the very least, recklessly disregarded Plaintiff's rights. Defendant's behavior demonstrated a conscious indifference and utter disregard of its effect upon the health, safety, and rights of Plaintiff. Defendant was placed on notice of the wrongfulness of his actions first after accepting a criminal plea for similar conduct more than a decade ago and next after he engaged in multiple conversations with Plaintiff in which she informed him what a negative effect the uploads were having on her life. Rather than attempt to delete the content from the internet or even simply stop posting her pictures, Defendant doubled down, posting even more regularly and with additional identifying information about Plaintiff.

Defendant's conduct has forever shaped and changed Plaintiff's life for the worse, causing her to hide and remove herself from professional and social situations in which she would otherwise be a part and thrive. Defendant's desire to appear at the inquest solely to stare at one of his victims while she testified all the while intending and proceeding to plead the fifth with regard to what he had done to her demonstrates callous indifference to the harm she caused. For these reasons

and all of those discussed by Plaintiff at the inquest, Plaintiff is requesting $5,000,000 in punitive damages.

D.  Attorney Fees

As annexed in the Declaration of Daniel Szalkiewicz, plaintiff is requesting $75,664.64 in

attorney fees and costs (Exhibit 10).

Total request for a judgment:

| | | |
|---|---|---|
| A. | Past Medical Expenses: | $1,080.00 |
| B. | Future Medical Expenses | $325,000.00 |
| C. | Lost earning potential: | $350,000.00 |
| D. | Past pain and suffering | $1,000,000.00 |
| E. | Future pain and suffering | $2,000,000.00 |
| F. | Punitive Damages | $5,000,000.00 |
| G. | Attorney fees and costs | $75,664.64 |
| | Total | $8,751,744.64 |

Dated: New York, New York
      May 30, 2025

/s/ Daniel S. Szalkiewicz
Daniel S. Szalkiewicz. Esq.

7

# Exhibit 1

No. 97

**SUPREME COURT -** New York **COUNTY**

**TRIAL TERM. Part** 5

Dr. Spring Chenoa Cooper

March 21, 2024

**Calendar No.** 2023L-01772

**Index No.** 153384/2018

**AGAINST**

Ryan Broems, Calidaddy26, Inriskwetrust, John Does 1-100

*I hereby Certify that this cause was tried before*

*Hon.* Hasa A. Kingo . { *without a Jury,* (*and a Jury*) *on the* 16th

*day of* February 2024 *, and a* { decision (*verdict*) *rendered therin for*

*the* Plaintiff / *for the sum of* Thirty million dollars and zero cents ($30,000,000.00) Pursuant to an order of Hon. Hasa A. Kingo, dated February 15, 2024, defendants Calidaddy26, Inriskwetrust, and John Does 1-100 were removed from the case and the caption was amended accordingly. See NYSCEF document number 180. The awarded sum to Plaintiff in the amount of $30,000,000.00 was as follows:

Conscious pain, suffering, emotional distress, and loss of enjoyment of life caused by the defendant from the time of the incident up to present
= $5,000,000.00

———— *Clerk.*

Conscious pain, suffering, emotional distress, and loss of enjoyment of life caused by the defendant from the time of the verdict to the time Plaintiff is expected to live = $5,000,000.00

Punitive damages against Defendant on the cause of action for violation of New York City Administrative Code § 10-180 (New York City's law against the dissemination of nonconsensual pornography = $5,000,000.00

Punitive damages against Defendant on the cause of action for the intentional infliction of emotional distress upon Plaintiff = $15,000,000.00

Grand total award = $30,000,000.00

Milton A. Tingling
Clerk.

# Exhibit 2

Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 12 of 87 PageID:
209

**At an IAS Part of the Supreme Court of the State of New York, held in and for the County of New York at the Courthouse located at 80 Centre Street, New York, New York, on the <u>September</u> day of _____, 2022**

PRESENT:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | | |
|---|---|---|
| M.H | Plaintiff, | **<u>JUDGMENT</u>** |
| -against- | | |
| E.T. A/K/A E.M. | | Index No. 161144/2020 |
| | Defendant, | |

The plaintiff, by and through his attorneys, DANIEL SZALKIEWICZ & ASSOCIATES, P.C. having commenced an action against the defendant for an Order for personal injuries relating to defamation, together with all prior pleadings and proceedings heretofore had herein in this matter having been set down for an Inquest on Damages scheduled before the Hon. Frank P. Nervo, on September 13, 2022 and said Inquest on Damages having been duly conducted on September 13, 2022; a witness for plaintiff having appeared, testimony adduced, and submissions of plaintiff having been duly received into evidence, and after due deliberation thereon; it is,

NOW, upon the Summons and the Complaint dated July 13, 2020, the so ordered transcript of the Inquest on Damages dated September 13, 2022 and annexed hereto, the Order dated September 15, 2022, and annexed hereto, and upon all prior pleadings and proceedings heretofore had herein; it is

1

Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 13 of 87 PageID: 210

~~ORDERED and~~ ADJUDGED, that Plaintiff, Marisa Hahn, residing at 258 Old Woodbury

and recover from
Rd., Southbury, CT, 06488 has a judgment against the defendant Emily Marks, residing at 211 E.

33rd, New York, NY 10016, in the sum of ONE MILLION TWO HUNDRED THIRTY-SIX

THOUSAND FOUR HUNDRED NINTY SIX DOLLARS AND FIVE CENTS ($1,236,496.05),

~~allocated as follows:~~

~~$25,850.00 for legal and expert fees;~~
~~$350,000.00 in compensatory damages;~~
~~$750,000.00 for punitive damages;~~
~~$646.50 for past medical expenses; and~~
~~$110,000 for future medical expenses~~

$1152.80
~~and the~~ costs and disbursements  in the amount of ~~$1,371.90~~, plus interest in the

amount of  $2439.12      , for a total judgment of $ 1,240,087.97           , and

plaintiff shall have execution thereof.

ENTERED:

Dated:    21 st   Sep.    2022

Milton Adair Tingling
County Clerk

**F I L E D**
**Sep 21 2022**
NEW YORK
COUNTY CLERK'S OFFICE

2

INDEX NO. 161144/2020

Bill of Costs (with CPLR sections) Blank Court: 1-95

Blumberg
Law Products
Established 1887

www.blumberg.com

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF New York

Index No. 161144/2020

M.H.

Plaintiff(s)

against

Costs of Marisa Hahn

E.T.

Defendant(s)

| COSTS | $ | DISBURSEMENTS | $ |
|---|---|---|---|
| Costs before note of issue CPLR §8201 subd. 1 | 200 | Fee for index number CPLR §8018(a) | 210.00 |
| Costs after note of issue CPLR §8201 subd. 2 | 200 | Referee's fees CPLR §8301(a)(1), 8003(a) | |
| | | Commissioner's compensation CPLR §8301(a) (2) | |
| Trial of issue CPLR §8201 subd. 3 | 300 | Clerk's fee, filing notice of pend. or attch. CPLR §8021(a)(10) | |
| Allowance by statute | | Entering and docketing judgment CPLR §8301(a)(7), 8016(a)(2) | |
| CPLR §8302(a),(b) | | Paid for searches CPLR §8301(a)(10) | |
| Additional allowance | | Affidavits & acknowledgments CPLR §8009 | |
| CPLR §8302(d) | | Serving copy summons & complaint CPLR §8011(h)(1), 8301(d) | 50.00 27.75 |
| Motion costs | | Request for judicial intervention | 95.00 |
| CPLR §8202 | | Note of issue CPLR §8020(a) | 30.00 |
| Appeal to Appellate Term | | Paid referee's report CPLR §8301(a)(12) | |
| CPLR §8203(b) | | Transcripts and filing CPLR §8021 | |
| Appeal to Appellate Division | | Certified copies of papers CPLR §8301(a)(4) | |
| CPLR §8203(b) | | Satisfaction piece CPLR §5020(a), 8021 | |
| Appeal to Court of Appeals | | Certified copy of judgment CPLR §8021 | |
| CPLR §8204 | | Postage CPLR §8301(a)(12) | |
| Costs upon frivolous claims | | Jury fee CPLR §8020(c) | |
| and counterclaims | | Stenographers' fees CPLR §8002, 8301 | 22.80 |
| CPLR §8303-a | | Sheriff's fees on execution CPLR §8011, 8012 | |
| | | Sheriff's fees, attachment, arrest, etc. CPLR §8011 | |
| | | Paid printing cases CPLR §8301(a)(6) | |
| | | Clerk's fees Court of Appeals CPLR §8301(a)(12) | |
| | | Paid copies of papers CPLR §8016(a)(4) | 45.00 21.35 |
| | | Motion expenses CPLR §8301(b) | |
| | | Fees for publication CPLR §8301(a)(3) | |
| | | Serving subpoena CPLR §8011(h), 8301(d) | |
| | | Paid for search CPLR §8301(a)(10) | |
| | | | |
| | | Referee's Report | |
| | | Attendance of Witnesses CPLR §8001(a)(b)(c), 8301 (a)(1) | |

SEPTEMBER 21 2022
I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$1152.80
Milton Adam Tingling
CLERK

COSTS ................ $ 700.00

DISBURSEMENTS .......... ~~671.90~~ 452.80

TOTAL .................. $1152.80 ~~1371.90~~            ~~671.90~~ 452.80

STATE OF NEW YORK      )
                       ):SS.:
COUNTY OF NEW YORK   )

The undersigned, an attorney duly admitted to practice in the courts of this state, affirms, that he is a partner with the firm of DANIEL SZALKIEWICZ & ASSOCIATES, P.C., attorneys of record for the plaintiff, MARISA HAHN, in the above entitled action; that the foregoing disbursements have been or will necessarily be made or incurred in this action and are reasonable in amount and that each of the persons named as witnesses, attended as such witness on the trial, hearing or examination before trial herein the number of days set opposite their names; from the place of said trial, hearing or examination: and each of said persons, as such witness as aforesaid necessarily traveled the number of miles so set opposite their names, in traveling to, and the same distance in returning from the same place of trial, hearing or examination; and that copies of documents or papers as charged therein were actually and necessarily obtained for use.

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated: New York, New York
September 14, 2022

**FILED**
**Sep 21 2022**
**NEW YORK**
**COUNTY CLERK'S OFFICE**

_____
Daniel S. Szalkiewicz, Esq.

FILED: NEW YORK COUNTY CLERK 09/21/2022 02:21 PM
NYSCEF DOC. NO. 34

INDEX NO. 161144/2020

Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 16 of 87 PageID:
213

RECEIVED NYSCEF: 09/21/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.   20 161144

-----------------------------------------------------------------------

M. H.

                              Plaintiff(s)

            vs.

E. T.  A/K/A E.M.

                              Defendant(s)

-----------------------------------------------------------------------

Judgment

Attorneys for Plaintiff(s)

Daniel Szalkiewicz & Associates, P.C.
23 West 73rd Street Suite 102
New York, NY 10023
Phone:212-706-1007

20 161144

1 – 2
**FILED AND DOCKETED**
Sep 21 2022
AT       02:09 P    M
N.Y. CO. CLK'S OFFICE

# Exhibit 3

Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 18 of 87 PageID: 215

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK : CIVIL TERM  PART 4
 2   ---------------------------------------------X
     M.H.,
 3                                   Plaintiff,

 4              – against –                        (VIA MS TEAMS)

 5   E.T. A/K/A E.M.,
                                     Defendant.
 6   ---------------------------------------------X
     INDEX NO. 161144/20         60 Centre Street
 7                               New York, New York
                                 September 13, 2022
 8

 9   BEFORE:

10           THE HON. FRANK P. NERVO, J.S.C.

11

12   APPEARANCES:

13

14   DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
     Attorneys for Plaintiff
15   23 West 73rd Street – Suite 102
     New York, New York  10023
16   BY: DANIEL SZALKIEWICZ, ESQ.

17

18

19

20

21                  *          *          *

22

23

24                            JACK L. MORELLI
                              Senior Court Reporter
25
```

DECISION

1              THE COURT:  Any further evidence to be

2      presented?

3              MR. SZALKIEWICZ:  No, Your Honor, just Exhibits

4      1 through 13.

5              THE COURT:  All right.  The Court will of

6      course, having reviewed the documents, grant counsel

7      attorney's fees as requested.  The Court will take

8      judicial notice of the life expectancy data which has been

9      provided.  As I mentioned earlier, all the exhibits

10     previously submitted have been deemed and received and

11     marked in evidence.

12             The Court finds as follows after inquest:  With

13     respect to the plaintiff's request for damages, for

14     compensatory damages for emotional distress, the Court

15     awards the sum of $350,000.  With respect to past medical

16     expenses the amount requested is granted, $646.05.  With

17     respect to the future medical expenses the Court awards

18     $110,000.  With respect to punitive damages the Court

19     awards the amount requested of $750,000.  Regarding

20     attorney's fees the Court awards the amount of $25,000 as

21     requested.  The Court also awards expert fees in the

22     amount of ~~$1500~~ $850.00 as requested.

HON. FRANK P. NERVO
J.S.C.

23             MR. SZALKIEWICZ:  Okay.  Your Honor, we should

24     submit a proposed judgment to the Court or --

25             THE COURT:  Hold on one second, that's an

- J L M -

DECISION

1    administrative question I have to explore.

2           (Pause)

3           THE COURT:  Back on the record.  In addition to

4    the foregoing, the Court also will award plaintiff with

5    costs and disbursements as assessed by the clerk.

6           MR. SZALKIEWICZ:  And interest from today?

7           THE COURT:  And interest from -- you're given

8    interest from the date the matter was determined in your

9    client's favor.  You want from today? Fine.  Interest from

10   today's date, September 13, 2022.

11          MR. SZALKIEWICZ:  Thank you very much.

12          THE COURT:  Thank you very much.  Good luck

13   everybody.

14          MR. SZALKIEWICZ:  Thank you.  I appreciate it.

15          (Proceedings concluded)

16   CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT.

17

18   _____

19        JACK L. MORELLI, CM, CSR

20

21        SO ORDERED

22

23   HON. FRANK P. NERVO
                          J.S.C.
24   Dated: September 15, 2022

25

                  - J L M -

# Exhibit 4

No *Shepard's* Signal™
As of: September 8, 2022 2:25 PM Z

## *Wellein v. Batley*

United States District Court for the District of Maryland

October 12, 2021, Decided; October 12, 2021, Filed

Civil Case No.: SAG-21-276

**Reporter**

2021 U.S. Dist. LEXIS 196173 *; 2021 WL 4750733

CARRIE WELLEIN, Plaintiff, v. JERRY O. BATLEY, JR., M.D., Defendant.

## Core Terms

expenses, ***damages***, attorney's fees, intimate, requests, treble, emotional distress, default judgment, punitive ***damages***, awards, award of punitive ***damages***, treatment plan, actual damage, Out-of-Pocket, long-term, permanent, complied, injuries, reasons, images

**Counsel:  [\*1]** For Carrie Wellein, Plaintiff: David S Wachen, LEAD ATTORNEY, Wachen LLC, Potomac, MD.

**Judges:** Stephanie A. Gallagher, United States District Judge.

**Opinion by:** Stephanie A. Gallagher

## Opinion

### MEMORANDUM OPINION

On February 2, 2021, Plaintiff Carrie Wellein filed a complaint against Defendant Jerry O. Batley, Jr. asserting several claims against him related to his surreptitious recording of the Plaintiff in intimate moments, and his distribution of ***intimate images*** of the Plaintiff without her consent. ECF 1. Despite being served with the Summons and Complaint, the Defendant failed to respond to the Complaint, and the Clerk's Office entered a Notice of Default on March 26, 2021. ECF 7. On July 27, 2021, Plaintiff moved for a default judgment, which the Court granted on August 12, 2021. ECF 13. Among other things, the Default Judgment ordered the Defendant, within 21 days, to return or destroy all ***intimate images*** of the Plaintiff; to remove any such material from the Internet; to secure the return of such material from anyone to whom he distributed it (other than those individuals alleged in the Complaint); and to certify to the Court that he had complied with those requirements. *Id.* To date, the Defendant has not complied **[\*2]** with that order.[1] Moreover, while the Default Judgment found the Defendant liable on all claims alleged in the Complaint, it deferred the question of ***damages*** and scheduled a ***damages***

---

[1] The Court will continue to assess whether other steps may be appropriate to ensure compliance with that Order, including exercise of the Court's contempt powers.

hearing for September 30, 2021. *Id.* In the interim, Plaintiff also filed a Motion for Attorney's Fees and Expenses. ECF 15. The Court held a ***damages*** hearing on September 30, 2021 at which the Plaintiff and Dr. Christiane Tellefsen, M.D. testified in support of the Plaintiff's ***damages*** requests. ECF 16. The Defendant failed to appear at the hearing. *Id.*

Plaintiff requests $71,485 as compensation for her expenses to-date, and projected into the future, to pursue the comprehensive treatment plan her doctors recommend. Sept. 27, 2021 Supplement on Out-of-Pocket ***Damages***.[2] Plaintiff also requests $750,000 as compensation for the emotional distress she has suffered due to the Defendant's transgressions. ECF 9 at 26. Because *42 Pa. C.S.A. § 8316.1(c)(1)* allows the Court, in its discretion, to award treble ***damages***, the Plaintiff also requests trebling of her actual ***damages***. *Id.* at 26-27. Additionally, Plaintiff asks for $700,000 in punitive ***damages*** as punishment for the Defendant's reprehensible conduct, and his disrespect for the Court and the **[*3]** litigation process. *Id.* at 27-29. Finally, Plaintiff asks for $52,591 in attorney's fees and $8,363.50 in expenses that have been incurred by her lawyers. ECF 17.

The Court will grant Plaintiff's request for $71,485 to cover her treatment-related expenses, and it will grant the Plaintiff's request for $750,000 as compensation for the emotional distress she has suffered. However, the Court declines to treble these awards. Although *42 Pa. C.S.A. § 8316.1(c)(1)* allows the Court, in its discretion, to treble actual ***damages*** sustained, the statute appears to allow such recovery primarily because "dissemination of an intimate image may cause long-term or permanent injury." *Id.* The Court certainly acknowledges the long-term, and potentially permanent, injuries the Plaintiff has suffered because of the Defendant's conduct, but the Court finds that the significant ***damages*** awards described herein adequately account for those injuries.

The Court will also award the Plaintiff $500,000 in punitive ***damages***. While this is less than the $700,000 award the Plaintiff asks for, the Court is in a difficult position with respect to fashioning a punitive ***damages*** award in light of the sizeable compensatory damage and attorney's fee awards **[*4]** and the dearth of evidence regarding the Defendant's financial situation. The Court believes that a $500,000 punitive ***damages*** award, resulting in a total judgment against the Defendant in the amount of $1,378,145.50, provides significant punishment for the Defendant's conduct.

Further, the Defendant will be required to pay the Plaintiff's reasonable attorney's fees and expenses. While the Court finds that Plaintiff's counsel's fees are largely reasonable, it finds that 22.6 hours is more time than was reasonably necessary to prepare for the September 30, 2021 ***damages*** hearing. ECF 17 at 2. The Court finds that, under the circumstances, 11.3 hours would have been a reasonable amount of preparation time. After adjusting those hours, Plaintiff will be awarded $48,297 in attorney's fees, plus $8,363.50 for Plaintiff's counsel's expenses.

**CONCLUSION**

---

[2] This supplement was hand-delivered to the Court at the September 30, 2021 ***damages*** hearing and was not filed on the docket, but it merely provides an updated tabulation of the Plaintiff's expenses related to the same treatment plan described in her Motion for Default Judgment. ECF 9 at 22.

2021 U.S. Dist. LEXIS 196173, *4

For the reasons set forth above, Plaintiff's Motion for Fees and Expenses, ECF 15, is GRANTED in part and DENIED in part. Judgment will be awarded in favor of the Plaintiff, and against the Defendant, in the amount of $1,378,145.50. A separate order follows.

DATED: October 12, 2021

/s/ Stephanie A. Gallagher

United States District Judge


## ORDER

For the **[*5]** reasons set forth in the accompanying Memorandum Opinion, it is this 12th day of October, 2021, by the United States District Court for the District of Maryland ORDERED that:

(1) Plaintiff's Motion for Fees and Expenses, ECF 15, is GRANTED in part and DENIED in part;

(2) Judgment will be awarded in favor of the Plaintiff, and against the Defendant, in the total amount of $1,378,145.50: A. Plaintiff will be awarded $71,485 as compensation for the out-of-pocket expenses related to her treatment plan;

B. Plaintiff will be awarded $750,000 as compensation for the emotional distress caused to her by the Defendant;

C. Plaintiff will be awarded $500,000 in punitive ***damages***;

D. Plaintiff will be awarded $48,297 in attorney's fees; and

E. Plaintiff will be awarded $8,363.50 as compensation for the expenses Plaintiff's counsel has incurred in this case;

(3) The Clerk shall CLOSE this case.

/s/ Stephanie A. Gallagher

United States District Judge

_____

# Exhibit 5

*Prepared by the Court*

| | |
|---|---|
| S.A., | SUPERIOR COURT OF NEW JERSEY |
|                   Plaintiffs, | LAW DIVISION: CIVIL |
| | ESSEX COUNTY |
|     vs | DOCKET NO.:  ESX-L-233-19 |
| | |
| **TATE AUSTIN,** | <u>Civil Action</u> |
| | |
|                Defendant. | **ORDER** |

      **THE ABOVE MATTER** having come before The Court for a Proof Hearing, as the Defendant failed to appear for trial on January 26, 2024, and a Default having been entered against Defendant at that time, and a Proof Hearing having been heard on January 16,2024, and Plaintiff having testified and offered into evidence credible testimony and proofs in this matter, and This Court having found that the Plaintiff has met the burden of proof, and having found that the 25% enhancement of the Plaintiff's Attorney's fee to be reasonable under the circumstances, as permitted by the Rules,

      **IT IS ON** this 31st, day of January, 2024,

      **ORDERED** that Judgement is entered in favor of the Plaintiff against the Defendant in the following amounts:

        <u>**Count I**</u> Violation of NJSA 2A:53D4

| | | |
|---|---|---:|
| 1) Statutory Damages | $ | 2,000.00 |
| 2) Punitive Damages | $ | 500,000.00 |
| 3) Attorneys Fees (having been found fair and reasonable) | | |
| Fee | $ | 101,700.00 |
| 25% Enhancement | $ | 25,470.00 |
| Costs | $ | 1,903.91 |

| | | |
|---|---|---|
| **Count II** Intentional Infliction of | | |
| Emotional Distress | $ | 500,000.00 |
| Loss of Future Earnings | $ | 3,297,531.00 |
| **Count III** Invasion of Privacy | $ | 500,000.00 |
| | **TOTAL $:** | **4,928,559.91** |

**FURTHER ORDRED** that a copy of this Order shall be served upon all parties/counsel of record within seven (7) days of the date hereof, per the Rules of Court.

*/S/Hon. Robert H. Gardner, J.S.C.*

**HON. ROBERT. H. GARDNER J.S.C**

# Exhibit 6

## *J.M. v. Rozanov*

Supreme Court of New York, Bronx County

April 19, 2024, Decided

Index No. 811336/22E

**Reporter**

2024 N.Y. Misc. LEXIS 1910 *; 2024 NY Slip Op 24132 **

 [**1]  J.M., Plaintiff(s), against Victor Rozanov, Defendant(s).

**Notice:** THIS OPINION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE PRINTED OFFICIAL REPORTS.

**Prior History:** *J.M. v. Rozanov, 2023 N.Y. Misc. LEXIS 15812 (N.Y. Sup. Ct., Apr. 12, 2023)*

**Judges:**  [*1] HON. FIDEL E. GOMEZ, JSC.

**Opinion by:** FIDEL E. GOMEZ

## Opinion

Fidel E. Gomez, J.

In this action for, *inter alia*, intentional infliction of emotional distress, after an inquest, this Court awards plaintiff the damages discussed hereinafter.

According to the complaint, the instant action is for violations of *New York City Administrative Code § 10-180*, *Civil Rights Law § 50-b*, and intentional infliction of emotional distress. Plaintiff and defendant were involved in a romantic relationship after meeting each other while freshmen at Seton Hall University. During the course of their relationship, the parties took pictures and videos of plaintiff engaging in sexual acts. It was agreed that the foregoing videos and pictures would remain between them and deleted after the parties watched them. On May 27, 2017, however, defendant uploaded a one minute and fifteen second video of plaintiff performing fellatio to Youporn.com. The video, which showed plaintiff's face and bore her full name, was then transferred to CamWhores.com. Plaintiff learned about the publication of the foregoing video when she began to receive harassing messages from strangers, who tracked her down using social media. Plaintiff contacted defendant, who directed her to his attorney. On August 7, 2017, after plaintiff [*2]  contacted the police, the video, which remained online for nearly three months and had been viewed over 5,000 times, was removed. Plaintiff then discovered that on November 3, 2015, defendant posted intimate and non-intimate photographs of her on CumOnPrintedPics.com. Along with the images, defendant posted sexually explicit messages on the foregoing site, including plaintiff's first name. Defendant also posted claims that others had sent him photos containing sexually explicit descriptions of sexual acts being performed

using plaintiff's photographs. Based on the foregoing, plaintiff reported defendant's conduct to Seton Hall University, which in the fall of 2017 conducted a hearing at which defendant admitted to the conduct alleged by plaintiff. Thereafter, plaintiff sued defendant in New Jersey for the nonconsensual dissemination of the first video posted by defendant. In 2022, plaintiff learned that on March 22, 2017, defendant created a second post on the aforementioned forum, where he posted intimate and non-intimate photographs of plaintiff. As a result of the foregoing post, defendant received and posted photographs sent to him by others using plaintiff's photographs in the [*3] commission of sexual acts. Plaintiff also learned that on May 8, 2017, defendant posted a link to a sexually explicit video of her, which he had uploaded to PornHub.com. Based on the foregoing, plaintiff began to experience panic attacks, depression, [**2] and anxiety. Plaintiff also struggled to focus, which affected her academically. Plaintiff treated with a psychiatrist once a week and continues to receive therapy. Plaintiff interposes three causes of action. The first cause of action is for the violation of _New York City Administrative Code § 10-180_, wherein plaintiff alleges that defendant disclosed intimate images of her without her consent and that such disclosure caused her damages. The second cause of action is for a violation of _Civil Rights Law § 52-b_, wherein plaintiff alleges that defendant disclosed intimate images of her without her consent and that such disclosure caused her damages. The third cause of action is for intentional infliction of emotional distress, wherein it is alleged that defendant disclosed intimate images of plaintiff without her consent with the intent to cause severe emotional distress, and that such conduct was so extreme in degree and so outrageous in character that it is beyond all possible bounds of decency.

On [*4] April 12, 2013, the Court (Wilson, J.) issued an order granting plaintiff's application for the entry of a default judgment and setting this matter down for inquest.

On April 1, 2024 plaintiff appeared for an inquest, which was held on the record.

At the inquest, plaintiff testified, in pertinent part, as follows. Plaintiff and defendant dated for some time. During their relationship, defendant took sexually explicit pictures and videos of her. It was agreed that defendant would not publish the pictures or videos, and that they were solely for defendant's private use. However, unbeknownst to plaintiff defendant uploaded two of the videos and several photos to websites on the internet and then shared links to the videos and photographs on other websites. Plaintiff discovered defendant's conduct when strangers contacted her and apprised her of the videos and photographs via her social media accounts. Plaintiff confronted defendant, who denied that he had shared the photographs or videos on the internet. As a result, plaintiff reported defendant's conduct to Seton Hall University, the school she and defendant attended, reported the same to the police, and sued defendant in New Jersey. Ultimately [*5] the police removed the videos and photographs from the internet, defendant was expelled from Seton Hall University, defendant was criminally tried and convicted for his conduct and had a civil judgment issued against him as a result of the same. Despite the foregoing, defendant continued to post explicit photographs and videos of plaintiff on the internet. Along with posting the videos and photographs on the internet, defendant also asked others to post photographs and videos of themselves engaging in sexual acts using the videos and photographs of plaintiff, which defendant then also posted on the internet. As a result of the foregoing, plaintiff became very depressed and anxious. Plaintiff developed a fear of leaving her home because she was afraid that people who had seen her videos and photographs on the

Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 31 of 87 PageID: 228

Page 3 of 9

2024 N.Y. Misc. LEXIS 1910, *5; 2024 NY Slip Op 24132, **2

internet would recognize her. Plaintiff developed general anxiety disorder, was and continues to be treated for the same.

Plaintiff also submitted documentary evidence.

First plaintiff submitted a judgment from the Superior Court of New Jersey (Plaintiff's Exhibit 1), which the Court admitted into evidence[1] . The judgment indicates that on January 25, [**3] 2023, in a civil action brought [*6] by plaintiff against defendant, upon defendant's default, that court awarded plaintiff damages for medical expenses. Plaintiff was also awarded punitive damages totaling $100,000.

Plaintiff also submitted other documents (Plaintiff's Exhibits 3 and 5), namely screenshots from several websites, and which the Court admitted into evidence[2] . Plaintiff's Exhibit 3 is a compilation of screenshots from CumonPrintedPics.com, a website. The screenshots are dated between November 3, 2015 and March 22, 2017, are under a thread labeled "Cute Slut Julia," and depict plaintiff fully clothed and either in underwear or a swimsuit. Within the thread, users shared photos of plaintiff, some of which contain pictures of the user's genitalia, and make comments such as "I want to smell Julia's sweet butthole and gag fuck her mouth as she cries." The documents also contain a link to a sexually explicit video of the plaintiff, which was posted on PornHub.com.

Plaintiff's Exhibit 5 is a compilation of screenshots from an online forum in 2020. The [**4] screenshots contain several pictures of plaintiff wearing underwear, a bikini, and/or regular clothing. Many of the photos contain comments such as "looking for [*7] tributes if [sic] of my ex," and "23 m looking for someone to jerk to my family and ex friends."

---

[1] It is well settled that a court can take judicial notice of any and all undisputed court records and files (*Khatibi v Weill, 8 AD3d 485, 485, 778 N.Y.S.2d 511 (2d Dept 2004)*. Indeed, this rule includes the court's own court files and extends to files related to proceedings in other courts (*MJD Construction, Inc. v Woodstock Lawn & Home Maintenance, 299 AD2d 459, 459, 749 N.Y.S.2d 895 [2d Dept 2002]*; *Ptasznik v Schultz, 247 AD2d 197, 199, 679 N.Y.S.2d 665 [2d Dept 1998]*; *Warner v Board of Education of the City of New York, 14 AD2d 300, n.1, 220 N.Y.S.2d 794 [1st Dept 1961]*). When a court chooses to take judicial notice of records, it obviates a foundation for purposes of admitting said documents into evidence (*Bernasconi v Aeon, LLC, 105 AD3d 1167, 1169, 963 N.Y.S.2d 437 [3d Dept 2013]*; *Lagano v Soule, 86 AD3d 665, 667, 926 N.Y.S.2d 729, n 5 [3d Dept 2011]*; *Secretary of Dept. of Hous. and Urban Dev. v Torres, 2 Misc 3d 53, 55, 774 N.Y.S.2d 245 [App Term 2003]*). Here, the Court took judicial notice of the judgment from the Superior Court of New Jersey, which bore a certification.

[2] With respect "to screenshots of text messages and similar digital photographs, the proper foundation may be established through testimony that the photograph accurately represented the subject matter depicted" (*People v Christie, 224 AD3d 1097, 1101, 206 N.Y.S.3d 207 [3d Dept 2024]* [internal quotation marks omitted]; *see People v Rodriguez, 38 NY3d 151, 155, 169 N.Y.S.3d 910, 190 N.E.3d 36 [2022]* ["This Court recently held that for digital photographs, like traditional photographs, the proper foundation may be established through testimony that the photograph accurately represents the subject matter depicted" (internal quotation marks omitted).]). Indeed, in *People v Price (29 NY3d 472, 58 N.Y.S.3d 259, 80 N.E.3d 1005 [2017]*), while the court declined to admit a photograph obtained from the internet into evidence, it stated that the lynchpin to admissibility of any piece of evidence was its authentication (*id. 476*). Further, the Court noted that like any photograph, the internet photograph at issue, was admissible if there was testimony that it accurately represented the subject matter therein, a rule that applied equally to new technologies such as the photo before it (*id. at 477*). Here, plaintiff testified that the documents fairly and accurately depicted the contents of the websites depicted in the documents and that each page represented a screenshot of the content on the respective website. Thus, the documents were admitted into evidence.

Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 32 of 87 PageID: 229

Page 4 of 9

2024 N.Y. Misc. LEXIS 1910, *7; 2024 NY Slip Op 24132, **4

Plaintiff's Exhibit 7 is a report,[3] which was admitted into evidence, from Howard Brenner (Brenner), a Licensed Clinical Social Worker, who states, the following. Brenner has treated plaintiff since 2019 and sees plaintiff once a week for 45 minutes. Brenner provides therapy to manage plaintiff's symptoms of anxiety, which stem from defendant's conduct, and to which he refers to as "revenge porn." When Brenner first treated plaintiff, she described feeling stigmatized by mutual friends because defendant denied his conduct. Plaintiff also became afraid to trust other people, since she never expected that defendant, with whom she shared a long-term relationship, would violate the trust they shared. Plaintiff is also afraid that people she may meet have seen the videos and photographs posted by defendant and fears the negative repercussions associated therewith. Defendant's conduct has caused several panic attacks, depression, and anxiety. Some of these episodes are completely debilitating. Brenner opines that plaintiff will require continued therapy to deal with continuing mental issues.

## Standard [*8] of Review

It is well settled that "a defendant whose answer is stricken as a result of a default admits all traversable allegations in the complaint, including the basic allegation of liability, but does not admit the plaintiff's conclusion as to damages" (*Rokina Optical Co., Inc. v Camera King, Inc., 63 NY2d 728, 730, 469 N.E.2d 518, 480 N.Y.S.2d 197 [1984]*; *McClelland v Climax Hosiery Mills, 252 NY 347, 351, 169 N.E. 605 [1930]*; *Arent Fox Kinter Plotkin & Kahn, PLLC v Gmbh, 297 AD2d 590, 590, 747 N.Y.S.2d 179 [2d Dept 2002]*). Moreover, "in a bench trial, no less than a jury trial, the resolution of credibility issues by the trier of fact and its determination of the weight to be accorded the evidence presented are entitled to great deference" (*People v McCoy, 100 AD3d 1422, 1422, 953 N.Y.S.2d 788 [4th Dept 2012]*). Indeed, when findings of fact rest in large measure on considerations related to the credibility of witnesses, a trial court's determination on this issue is accorded great deference (*Ning Xiang Liu v Al Ming Chen, 133 AD3d 644, 644, 19 N.Y.S.3d 565 [2d Dept 2015]*). Absent conclusions that cannot be supported by any [**5] fair interpretation of the evidence, a judgment rendered after a bench trial should not be disturbed (*Saperstein v Lewenberg, 11 AD3d 289, 289, 782 N.Y.S.2d 720 [1st Dept 2004]*).

At an inquest, plaintiff bears the burden of establishing damages and/or injuries by the tender of admissible evidence (*Abbas v Cole, 7 AD3d 649, 649, 776 N.Y.S.2d 846 [2d Dept 2004]*; *Tamburello v Bensonhurst Car & Limo Serv., Inc., 305 AD2d 664, 665, 759 N.Y.S.2d 690 [2d Dept 2003]*; *Godwins v Coggins, 280 AD2d 582, 582, 720 N.Y.S.2d 809 [2d Dept 2001]*; *Jacobs v New York City Tr. Auth., 14 Misc 3d 130[A], 836 N.Y.S.2d 485, 2007 NY Slip Op 50022[U] *1 [App Term 2007]*). Indeed, the admission of inadmissible evidence at an inquest is reversible error (*Kotlyar v Strogov, 58 AD3d 693, 693-694, 871 N.Y.S.2d 662 [2d Dept 2009]* ["After an

---

[3] *22 NYCRR § 202.46(a)* states that "In an inquest to ascertain damages upon a default, pursuant to *CPLR 3215*, if the defaulting party fails to appear in person or by representative, the party entitled to judgment, whether a plaintiff, third-party plaintiff, or a party who has pleaded a cross-claim or counterclaim, may be permitted to submit, in addition to the proof required by *CPLR 3215(e)*, properly executed affidavits as proof of damage." Moreover, **CPLR § 2106** states, in pertinent part, that "[t]he statement of any person wherever made, subscribed and affirmed by that person to be true under the penalties of perjury, may be used in an action in New York in lieu of and with the same force and effect as an affidavit." Here, Brenner's report is attached to a certification by Brenner, which incorporate his report by reference, stating that it is accurate and complete. Brenner's certifies the foregoing under penalty of perjury. Accordingly, Brenner's report was admitted into evidence.

Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 33 of 87 PageID: 230

Page 5 of 9

2024 N.Y. Misc. LEXIS 1910, *8; 2024 NY Slip Op 24132, **5

inquest on the issue of damages, the court awarded the plaintiff $50,000, without specifying whether the award was for pain and suffering, lost earnings, [*9] and/or medical expenses. Under the circumstances, and given the speculative nature of much of the plaintiff's proof at the inquest, and the court's error in admitting uncertified medical records into evidence, we remit the matter to the Supreme Court, Kings County, for a new inquest on the issue of damages" (internal citations omitted).]; _Abbas at 649-650_ ["Here, the defendant was denied this opportunity when the Supreme Court, inter alia, admitted the plaintiff's uncertified hospital records and unsworn medical reports into evidence over the defendant's objection. Further, the errors were not harmless. Thus, the defendant is entitled to a new inquest at which the plaintiff will be required to establish, through admissible evidence, his damages, if any" (internal citations omitted).]).

Notably,

> [t]he sole issue to be determined at an inquest is the extent of damages sustained by the plaintiff, and the inquest court should not consider the question of whether the defendant caused the damages sustained by the plaintiff

(_Castaldini v Walsh, 186 AD3d 1193, 1194, 127 N.Y.S.3d 917 [2d Dept 2020]_; _see Gonzalez v Wu, 131 AD3d 1205, 1206, 16 N.Y.S.3d 768 [2d Dept 2015]_; _Arluck v Brezinska, 180 AD3d 634, 635, 115 N.Y.S.3d 716 [2d Dept 2020]_ ["As such, the sole issue to be determined at the inquest was the extent of the damages sustained by the plaintiff, and the Supreme Court should not have considered issues of liability."]; [*10] _Rich-Haven Motor Sales, Inc. v Natl. Bank of New York City, 163 AD2d 288, 290, 558 N.Y.S.2d 91 [2d Dept 1990]_ ["Turning first to the issue of causation, we note that the allegations contained in Rich—Haven's complaint, insofar as they pertain to the question of liability, must be deemed admitted in light of the defendant's default which resulted in an award of summary judgment against it."]). Indeed, it is reversible error for the court to require the plaintiff at an inquest to establish causation as to the damages alleged (_Kouho v Trump Vil. Section 4, Inc., 93 AD3d 761, 763, 941 N.Y.S.2d 186 [2d Dept 2012]_ ["the Supreme Court erred in considering the question of whether the plaintiff's accident was caused by Fazio—Trina."]).

Moreover, at an inquest, the defaulting defendant may nevertheless appear and present testimony and evidence, and may cross-examine the plaintiff's witnesses in order to mitigate damages (_Tamburello v Bensonhurst Car & Limo Serv., Inc., 305 AD2d 664, 665, 759 N.Y.S.2d 690 [2d Dept 2003]_; _Godwins v Coggins, 280 AD2d 582, 582, 720 N.Y.S.2d 809 [2d Dept 2001]_).

## Applicable Law

In New York, there are several local and state laws which proscribe the nonconsensual publication of sexually explicit media.

Pursuant to _New York City, NY, Code § 10-180(b)(1)_, _New York City, NY, Code § 10-180(b)(1)_,

> [i]t is unlawful for a covered recipient to disclose an intimate image, without the depicted [**6] individual's consent, with the intent to cause economic, physical or substantial

Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 34 of 87 PageID: 231

Page 6 of 9

2024 N.Y. Misc. LEXIS 1910, *10; 2024 NY Slip Op 24132, **6

emotional harm to such depicted individual, where such depicted individual is or would be identifiable to another individual either from the [*11] intimate image or from the circumstances under which such image is disclosed.

Moreover, pursuant to *New York City, NY, Code § 10-180(d)(1)* and *(2)*, *New York City, NY, Code § 10-180(d)(1)* and *(2)*,

[a]ny individual who suffers harm from a violation of subdivision b of this section shall have a civil cause of action in any court of competent jurisdiction against the individual who violated that subdivision . . . The defendant may be held liable to the plaintiff for any or all of the following relief . . .(a) Compensatory and punitive damages; (b) Injunctive and declaratory relief; (c) Attorneys' fees and costs; and (d) Such other relief as a court may deem appropriate.

In addition, *Civil Rights Law § 52-b(1)(a)*, *(b)*, and *(c)*, state that

[a]ny person depicted in a still or video image, regardless of whether or not the original still or video image was consensually obtained, shall have a cause of action against an individual who, for the purpose of harassing, annoying or alarming such person, disseminated or published, or threatened to disseminate or publish, such still or video image, where such image . . . a. was taken when such person had a reasonable expectation that the image would remain private; and b. depicts (i) an unclothed or exposed intimate part of such person; or (ii) such person engaging in sexual [*12] conduct, as defined in subdivision ten of *section 130.00* of the penal law, with another person; and c. was disseminated or published, or threatened to be disseminated or published, without the consent of such person.

With regard to damages, the foregoing statute authorizes a court and or a jury to "award injunctive relief, punitive damages, compensatory damages and reasonable court costs and attorney's fees" (*Civil Rights Law § 52-b[2]*).

With respect to punitive damages, only when the actions of an alleged tortfeasor constitute gross recklessness or intentional, wanton, or malicious conduct aimed at the public, or when actions are activated by evil or other reprehensible motives, a party is entitled to punitive damages (*Boykin v Mora, 274 AD2d 441, 442, 711 N.Y.S.2d 904 [2d Dept 2000]* ["While the defendant's flight from the scene of the accident might be considered reprehensible, such conduct did not proximately cause any of the plaintiff's injuries."]; *Nooger v Jay-Dee Fast Delivery, 251 AD3d 307, 307, 673 N.Y.S.2d 1006 [2d Dept 1998]*; *Zabas v Kard, 194 AD2d 784, 784, 599 N.Y.S.2d 832 [2d Dept 1993]*; *Gravitt v Newman, 114 AD2d 1000, 1002, 495 N.Y.S.2d 439 [2d Dept 1985]* ["Plaintiff has made no allegations beyond those of ordinary negligence or malpractice as would constitute the basis for an award of punitive damages."]). Punitive damages are also appropriate when a defendant's conduct is so flagrant that it transcends mere carelessness (*Zabas at 784*), or when it contains elements of spite or malice (*Wilson v The City of New York, 7 AD3d 266, 267, 775 N.Y.S.2d 527 [1st Dept 2004]*). Lastly, [*13] punitive damages are also warranted when the conduct alleged involves "intentional or deliberate wrongdoing, aggravating or outrageous circumstances, fraudulent or evil motive, or conscious act in willful and wanton disregard of another's rights" (*Uilico Casualty Company v Wilson, [**7] Elser, Moskowitz, Edelman & Dicker, 56 AD3d 1, 13, 865 N.Y.S.2d 14 [1st Dept 2008]*).

Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 35 of 87 PageID: 232

Page 7 of 9

2024 N.Y. Misc. LEXIS 1910, *13; 2024 NY Slip Op 24132, **7

It is well settled that in an action alleging physical and/or psychic injuries, the measure of damages is adequate monetary compensation for conscious pain and suffering (*NY Pattern Jury Instr.—Civil 2:280* ["If you decide that defendant is liable, plaintiff is entitled to recover a sum of money which will justly and fairly compensate (him, her) for any injury, disability and conscious pain and suffering to date caused by defendant. . . . Conscious pain and suffering means pain and suffering of which there was some level of awareness by plaintiff."]; *Tate by McMahon v Colabello, 58 NY2d 84, 87-88, 445 N.E.2d 1101, 459 N.Y.S.2d 422 [1983]* ["Moreover, appropriately, this was followed by an instruction during the court's charge to the jury that the ultimate measure of damages was to be a sum of money which will justly and fairly compensate the plaintiff" (internal quotation marks omitted).]; *see Kehrli v City of Utica, 105 AD2d 1085, 1085, 482 N.Y.S.2d 189 [4th Dept 1984]*; *Kane v New York, N.H. & H.R. Co., 132 NY 160, 164-165, 30 N.E. 256 [1892]*).

In an inquest involving pain and suffering damages, it is helpful to employ the same analysis a court is asked to undertake when a party seeks to set aside a money [*14] damages verdict pursuant to *CPLR § 5501(c)*, as "excessive or inadequate [because] it deviates materially from what would be reasonable compensation." Like a determination of whether a verdict is appropriate, which requires a comparison of the verdict at issue "with relevant precedent" (*Donlon v City of New York, 284 AD2d 13, 16, 727 N.Y.S.2d 94 [1st Dept 2001]*), the same is true at an inquest involving pain and suffering damages, where the court is called upon to prescribe adequate compensation. To that end, employing the same analysis in a case where the damages award is sought to be altered, "analogous cases will be useful as benchmarks" (*id. at 16*). While it is understood that "such a method cannot, due to the inherently subjective nature of non-economic awards, be expected to produce mathematically precise results, much less a per diem pain and suffering rate" (*id. at 15*), it is nevertheless the only method to arrive at an appropriate measure of damages.

## **Discussion**

Plaintiff has credibly established entitlement to damages for defendants' conduct, namely the nonconsensual disclosure of videos and photographs depicting plaintiff engaging in sexual acts.

Significantly, plaintiff's testimony, corroborated by the documentary evidence establishes that defendant, without plaintiff's consent, [*15] published sexually explicit photos and videos of her engaging in sexual acts and in various stages of undress. Furthermore, defendant not only widely shared the foregoing videos and photographs on the internet, but created sexually explicit captions, which he posted along with the pictures and videos, and he urged others to use plaintiff's videos and pictures to pleasure themselves and post pictures of such acts. The record also establishes that defendant continued to engage in the foregoing conduct even after he was criminally tried and convicted and after a civil judgment for his conduct was entered against him. Lastly, with regard to damages, plaintiff's testimony and Brenner's report establish that plaintiff has been afflicted with stress, depression, anxiety and panic attacks, which are expected to continue.

Here, plaintiff's request for an award of past pain and suffering damages in the sum of $500,000 and an award of punitive damages in the sum of $2,500,000 is granted.

Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 36 of 87 PageID: 233

Page 8 of 9

2024 N.Y. Misc. LEXIS 1910, *15; 2024 NY Slip Op 24132, **7

While the Court was unable to find any published jury and/or bench trial awards for the causes of action asserted in this action, plaintiff provided the Court with relevant awards in other cases that support the [*16] damages sought (*M.H. v E.T., et* al., Sup Ct, New York County, Index No. [**8] 161144/2020, NY St Cts Elec Filing [NYSCEF] Doc No. 1 and 30 [Action where defendant shared sexually explicit and intimate photos of the plaintiff with others via telephone. Plaintiff sustained severe emotional disttress. After an inquest, the Court awarded plaintiff $350,000 for pain and suffering and $750,000 for punitive damages.]; Cooper *v Broems*, Sup Ct, New York County, Index No. 153384/18, NY St Cts Elec Filing [NYSCEF] Doc No. 1 and 185 [Action where defendant Broems published sexually explicit photos and videos of the plaintiff on websites. Plaintiff sustained emotional damages and the jury awarded her $5 million for past pain and suffering, $5 million for future pain and suffering, and $15,000,000 for punitive damages.]).

Accordingly, here the damages sought are well within the range representing fair and just compensation for pain and suffering. Moreover, here, defendant not only published plaintiff's intimate videos and photographs prior to being criminally convicted and having a civil judgment lodged against him, but he did so thereafter. Thus, here it is clear that defendant's conduct was intentional [*17] and deliberate, motivated by evil and with wanton disregard of plaintiff's rights (*Uilico Casualty Company at 13*). Accordingly, punitive damages are warranted and should be significantly more than the sums awarded in *M.H.* It is hereby

**ORDERED** that plaintiff is granted a judgment in the amount of $500,000 for past and future pain and suffering and $2,500,000 for punitive damages, plus interest, costs and disbursements. It is further

**ORDERED** that plaintiff submit a judgment to the Clerk of the Court, within 30 days hereof. It is further

**ORDERED** that the transcript of this inquest as well as all exhibits be sealed[4] . It is [**9] further

---

[4] **22 NYCRR 216.1(a)** states that "[e]xcept where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties. Where it appears necessary or desirable, the court may prescribe appropriate notice and opportunity to be heard." Since in legal proceedings, confidentiality is the exception, before the court seals [*18] the records of a proceeding, it must make an independent determination that there is good cause to seal the records (*Mancheski v Gabelli Group Capital Partners, 39 AD3d 499, 502, 835 N.Y.S.2d 595 [2d Dept 2007]*; *In re Will of Hofmann, 284 AD2d 92, 93, 727 N.Y.S.2d 84 [1st Dept 2001]*). Since the task involves weighing the public's interest in accessing information with the interest of the parties in keeping the proceedings confidential, a finding of good cause "presupposes that public access to the documents at issue will likely result in harm to a compelling interest of the" proponent of an order sealing the records (*Mancheski at 502*; *see Liapakis v Sullivan, 290 AD2d 393, 394, 736 N.Y.S.2d 675 [1st Dept 2002]*) and that there no viable alternative to sealing the records (*Mancheski at 502*; *Liapakis at 394*). Ultimately, however, good cause is merely the prudent exercise of the court's discretion (*id. at 502*). Here, to the extent the other records in the Court's file do not contain any information which identifies plaintiff, the sealing of the transcript and exhibits proffered at the hearing, which disclose plaintiff's identity, must be sealed. Indeed, where as here, plaintiff was the victim of the nonconsensual publication of pornographic material, there is no conceivable right by the public to know who she is or to view the published pornographic material. By contrast, the disclosure of such material or her identity to the public would essentially subject plaintiff to the very harm which precipitated this action in the first place. Accordingly, her interest in confidentiality outweighs any right by the public to view the transcript and the evidence proffered at the inquest.

2024 N.Y. Misc. LEXIS 1910, *18; 2024 NY Slip Op 24132, **9

**ORDERED** that plaintiff serve a copy of this Decision and Order with Notice of Entry upon defendant within 30 days hereof.

This constitutes this Court's Decision and Order.

Dated: April 19, 2024

Bronx, New York

**HON. FIDEL E. GOMEZ, JSC**

---

**End of Document**

# Exhibit 7

**Prepared by the Court**

| J.M., | SUPERIOR COURT OF NEW JERSEY |
|---|---|
| Plaintiff, | LAW DIVISION – ESSEX COUNTY |
| vs. | Docket No. ESX-L-008892-17 |
| VICTOR ROZANOV, | |
| Defendant. | **ORDER** |

This matter having been opened to the court by Plaintiff, J.M., by way of a proof hearing which was conducted before the Honorable Annette Scoca on February 24, 2022 with plaintiff and counsel appearing, and defendant in default status, appearing but no participating, and the court having conducted the proof hearing and considered pre and post hearing submissions, for good cause shown, and for the reasons stated in the Opinion of this Court dated January 25, 2023, it is hereby **ORDERED** as follows:

Plaintiff is awarded the sum of $483,680.00 in compensatory damages for past and future medical expenses. The damages shall be reduced by any applicable copayments and/or deductible sums.

Plaintiff is awarded the sum of $100,000.00 in punitive damages pursuant to N.J.S.A. 2A:15-5.12(h).

Plaintiff is awarded the sum of $38,991.24 for attorneys' fees and costs.

The total amount of the judgment against Defendant Victor Rozanov is $622,671.24.

A copy of this Order shall be served upon all counsel and/or parties of record in accordance with the Rules of Court within 7 days from this date.

/s/Annette Scoca, J.S.C.
HON. ANNETTE SCOCA, J.S.C.

# Exhibit 8

RECEIVED NYSCEF: 04/13.

F DOC. NO. 82

| Caption | Year Awarded | Total Recovery | Verdict or Settlement | Causes of Action | Citation | Forum | Facts Summary | Emotional Distress Award | Punitive Damages Award | Misc. Damages Award | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| per v. Broens | 2024 | $30m | Jury award in inquest on damages following default judgment | Revenge Porn | Index No. 153384/2018 (NY Sup. New York City filed April 13, 2018) | New York | Exboyfriend posted nude images of Dr. Cooper on Tumblr and "doxxed" her, or publicly identified her as the woman in the images and videos, by posting her name, social media handles, contact information, and other identifying information along with the nonconsensual pornography. | 1) $5m for past pain, suffering, emotional distress, and loss of enjoyment of life; 2) $5m for future pain, suffering, emotional distress, and loss of enjoyment of life | $5m punitive for dissemination of nonconsensual pornography; $15m for IIED | | Cooper testified that she feared h professal reputation as an associa professor at CUNY would be destroyed. Fortunately, she remai employed and thriving professor Cooper also described the chroni ongoing nature of revenge porn's injuries, where the images contin to crop up despite Dr. Cooper's considerable efforts to removal a noncensual pornography. Anc this day, she fears the judgment c colleagues. |
| rroll v. Trump | 2024 | $83m | Jury award | Defamation & Sexual Assault | Carroll v. Trump, No. 22-cv-10016 (LAK), 2023 WL 4612082 (S.D.N.Y. July 19, 2023) | New York (SDNY) | Trump sexually assaulted E. Jean Carroll in a Berdorf Goodman dressingroom and later defamed her by publicly and widely labelling her a liar. | $7.3m for emotional distress | $65m punitive | $11m reputational damages | Sustainable value - denied new tri a remititur |
| L. v Jackson | 2023 | $1.2Billion | Jury award | | CAUSE NO. 202220061 (Harris County, Texas) | Texas | Jackson posted intimate images of P on Facebook, Twitter, Dropbox, Pornhub and sent links to P's friends, family and co-workers. Materials included D.L.'s legal name and her home address, after the pair broke up | $200m for past & future mental anguish | $1 Billion punitive | | |
| legas v City of s Angeles & Reedy, individually | 2020 | $1.5m | Settlement | | Villegas v. City of L.A. No. 21-56376, 2023 WL 3883664, 2023 U.S. App. LEXIS 14257 (9th Cir. June 8, 2023) | California | Female L.A. police detective was beaten by a male Senior Lead Officer and the Senior Lead Officer threatened to share sexually explicit images taken secretly if she attempted to end their extramarital relationship. Detective broke up with Lead Officer, who sent explicit photos to colleagues. Detective complained to employer, and Detective was transferred in retaliation for lodging the complaints | | | | 1) emotional distress -- out on me leave due to stress 2) transferred f elite division to a lesser position |

| Case | Year | Award | Judgment | Cause of action | Case no. | State | Facts | | | | Effects |
|---|---|---|---|---|---|---|---|---|---|---|---|
| oud v Saba & Dickow | 2020 | $500k | Default judgment and inquest in favor of Doe | IIED; Invasion of privacy; Extortion; Conspiracy | | Michigan | Extorted P, a famous singer in Iraq, with threats of releasing explicit sexual images and videos, released a portion of them. 276,000 people saw the video over 3 weeks | | | | 1) no longer able to perform on st 2) humiliated 3) reclusive 4) anxi 5) depressed 6) crying spells 7) difficulty sleeping * sought tx for depression 8) had to delay weddi do to potential disgrace & the cost litigation 9) D threatened to kill P, whose brother was murdered in 2 |
| lark v Clark | 2019 | $3.2m | Jury award | IIED; Revenge porn | 18-CVS-5727 | | P's exhusband and girlfriend impersonated P online (Facebook, Craigslist, Kik) and distributed intimate images of P; posted topless photo on Facebook | $450k for alienation of affection (girlfriend); $1m libel (girlfriend) | $800k for IIED (ex-husband); $800k IIED (girlfriend) | $250k punitive (ex-husband); $250k punitive (girlfriend) | 1) severe emotional distress - P testified at trial that she cried hysterically, hyperventilated, and sought counseling for ongoing an (although she didn't attend for fea treatment would negatively impac maintaining shared custody) |
| oe v Jones & Vashington Nationals aseball Club | 2019 | $40.5k | Jury award : found Jones only | Revenge porn (other causes of action vol dismissed) | Case No. 37-2017-00037099-CU-PO-CTL (Sup. Ct. CA, San Diego Cnty. Filed Sept. 29, 2017) | California | Jones sent P's nude photos to at leat 2 people | | | | 1) embarrassed 2) humiliated 3) emotionally devastated 4) physica manifestations of emo distress, incl'ding vomiting at thought of D actions 5) treatment |
| Doe v Elam | 2018 | $6,012,600 (plus $450,000 for copyright infringemen t) | Default judgment and inquest in favor of Doe | Revenge porn; Intrusion; IIED; NIED; Negligence | 2:14-cv-09788 | California | Exboyfriend engaged in revenge porn after relationship ended. D sent photos and videos to Doe's personal and professional acquaintances, posed as her online and invited men to send her sexual images of themselves and visit her home for sex. | $3m compensatory | $3m punitive | $12,600 attorneys' fees | |
| Melgoza v Pompey | 2018 | $5.15m | Jury award : found that D acted with malice & oppression | privacy; Concealed recording device; Revenge porn (Distribution of sexually explicit materials) | 16-cv-003617 | California | Exboyfriend had secretly recorded sexual intercourse with P and posted images taken therefrom on Facebook. D tagged P's profile to ensure that P's friends and family would see the images | $5m pain & suffering | $150k punitive | | When she saw the images, she be 1) shaking, felt numb and threw u suicidal on the day the images we posted; 2) still has crying spells, s has nightmares; 4) still embarrass see people whom she knows have seen the post. |

RECEIVED NYSCEF: 04/13,

:F DOC. NO. 82

| Terry Gene Bollea (Hulk Hogan) v Gawker | 2016 | $140.1m | Jury award | IIED | 913 F. Supp. 2d 1325, 1327 (M.D. Fla. 2012) | Florida | Gawker (media company) posted online a video of Hogan engaging in sexual intercourse with a friend's wife | $115m for compensatory damages, of which $60m was specifically designated by jury as compensation for emotional distress due to the posting online of the video | $25.1m | | Sustainable value - trial judge refused to set aside verdict |

# Exhibit 9

Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 45 of 87 PageID: 242

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------x

KIMBERLEY FACEY,

      Plaintiff,

-against-

STACYANN THOMPSON,

-------------------------------------------------------------------x

Index No. 604703/2021

**NOTICE OF ENTRY
OF JUDGMENT**

     **PLEASE TAKE NOTICE** that the attached is a true and correct copy of the Judgment entered in this action dated April 24, 2024, and filed in the office of the Clerk of the Court for the Supreme Court of New York, County of Nassau, on April 29, 2024.

Dated: April 29, 2024
      New York, New York

Andrew M. Stengel, Esq.
Katherine E. Mayo, Esq.
The Law Firm of Andrew M. Stengel, P.C.
*Attorneys for Plaintiff*
11 Broadway, Suite 715
New York, NY 10004
Tel: (212) 634-9222
Fax: (212) 634-9223
andrew@stengellaw.com

To:    Garfield Heslop (via NYSCEF)
      Heslop & Dominique LLP
      147 Prince Street Suite 4-31
      Brooklyn, New York 11201
      *Attorneys for Defendant*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

P R E S E N T :

       **HON. FELICE J. MURACA, A.J.S.C.**      IAS/TRIAL PART 42

---

**KIMBERLY FACEY,**

             Plaintiff,      **DECISION ON INQUEST**

     -against-           Index No. 604703/2021

**STACYANN THOMPSON,**

             Defendant.

---

Plaintiff commenced this action to recover damages for a Violation of New York State's Revenge Porn Law codified in Civil Rights Law (NY Civ Rts) § 52-b. Defendant joined the action; however, her Answer was struck by Court Order entered on June 13, 2023. An inquest was commenced on April 1st, 2024. Both sides appeared for the inquest. Plaintiff and Dr. Geoffrey Walcott testified on Plaintiff's case-in-chief. Defendant testified on her direct case.

The Court has considered all the arguments and evidence presented by both sides. The Court finds Plaintiff is entitled to judgment against the Defendant as follows:

**First Cause of Action:** NY Civ Rts § 52-b (Revenge Porn Law)

**Compensatory Damages** against Stacyann Thompson:

Past Pain & Suffering: **$1,000,000.00**

Future Pain & Suffering: **$500,000.00**; this amount is awarded to provide compensation for 10 years. Punitive Damages: **$500,000.00**

Attorney's fees awarded: **$25,000.00**

**Permanent Injunction:**

Plaintiff is awarded a permanent injunction prohibiting the disclosure, displaying, dissemination, publishing, uploading, posting of any and all intimate images of Plaintiff and Defendant is directed to immediately remove, delete, and take down any publication of any kind currently in existence, and is further directed to delete it from her phone(s), computer(s) servers and cloud or other storage devices.

Dated: April 24, 2024        **ENTER:**
      Mineola, NY

                      **HON. FELICE J. MURACA, A.J.S.C.**

FILED: NASSAU COUNTY CLERK 04/29/2024 03:47 PM
INDEX NO. 604703/2021
NYSCEF DOC. NO. 39
Case 1:24-cv-08232-ESK-SAK    Document 30    Filed 05/30/25    Page 47 of 87 PageID:
244
RECEIVED NYSCEF: 04/29/2024

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-----------------------------------------------------------------x

KIMBERLEY FACEY,

      Plaintiff,

   -against-

STACYANN THOMPSON,

-----------------------------------------------------------------x

Index No. 604703/2021

==============================================================

**JUDGMENT**

==============================================================

*Attorneys for Plaintiff*
Andrew M. Stengel, Esq.
Katherine E. Mayo, Esq.
The Law Firm of Andrew M. Stengel, P.C.
11 Broadway, Suite 715
New York, NY 1004
Tel: (212) 634-9222
Fax: (212) 634-9223
andrew@stengellaw.com

# Exhibit 10

Daniel S. Szalkiewicz, Esq. (DS2323)
VERIDIAN LEGAL P.C.
23 WEST 73RD STREET
SUITE 102
NEW YORK, NEW YORK 10023
*Attorneys for the Plaintiff J.G.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| J.G., | |
| Plaintiff, | Case No. 24-cv-08232 |
| v. | |
| TYLER JONES a/k/a TYLER JOHN JONES, | |
| Defendant. | |

## CERTIFICATION IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

I, DANIEL S. SZALKIEWICZ, ESQ., an attorney duly admitted to practice in the Courts of the State of New Jersey, does hereby certify as follows:

1. I am a member of VERIDIAN LEGAL P.C., the attorneys of record for plaintiff J.G. ("J.G." or "Plaintiff") in this matter.

2. I am fully familiar with the facts and circumstances of the above-referenced case from my firm's file on this matter kept in the ordinary course of business and from information provided by our client.

3. I submit this certification in support of J.G.'s request for reasonable attorney's fees and other litigation costs reasonably incurred and such other equitable relief as the court determines to be appropriate.

1

### Argument

4.      15 U.S.C. 6841 and Rule 4:42-9 provides that attorney's fees are allowable when permitted by statute.

5.      NJ Rev Stat § 2A:58D-1 states that, in nonconsensual pornography cases, courts may award:

> (1)      Actual damages, but not less than liquidated damages computed at the rate of $1,000.00 for each violation of this act;
> (2)      Punitive damages upon proof of willful or reckless disregard of the law;
> (3)      Reasonable attorney's fees and other litigation costs reasonably incurred; and
> (4)      Such other preliminary and equitable relief as the court determines to be appropriate.

6.      "The first and most important step in the process of determining a reasonable counsel fee is the determination of the lodestar." Szczepanski v. Newcomb Med. Ctr., 141 N.J. 346, 355 (1995).

7.      "The lodestar calculation is defined as the number of hours reasonably expended by the attorney, multiplied by a reasonable hourly rate." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 445 (2001).

8.      Additionally,

> As our Supreme Court explained in *Rendine*, "our Legislature has passed a substantial number of statutes authorizing an award of a reasonable counsel fee to the attorney for the prevailing party." 141 N.J. 292, 322, 661 A.2d 1202 (1995). "Although the underlying purpose of those statutes may vary, they share a common rationale for incorporating a fee-shifting measure: to ensure 'that plaintiffs with bona fide claims are able to find lawyers to represent them[,] . . . to attract competent counsel in cases involving statutory rights, . . . and to ensure justice for all citizens.' " JHC Indus. Servs., LLC v. Centurion Cos., Inc., 469 N.J. Super. 306, 312-13 (App. Div. 2021)

9.     In <u>Szczepanski,</u> the court held that reasonableness is "determined independently of the provisions of the fee agreement" between the attorney and client and the "focus of the determination is to ascertain what fee is reasonable, taking into account the hours expended, the lawyer's customary hourly rate, the success achieved, the risk of non-payment and other material factors" <u>Szczepanski</u>, 358.

10.     Here, our firm's lodestar calculation for hours expended on this case is as follows:

| Attorney | Hours | Rate |
|----------|-------|------|
| Daniel Szalkiewicz | 93.20 | $500.00 |
| Cali Madia | 19.60 | $500.00 |
| **Total** | 112.80 | $56,400.00 |

### a. Our Hourly Rate and the Hours Expended Are Reasonable

11.     I have been admitted to practice in New York and New Jersey since 2010 and my Partner, Cali Madia, has been admitted to practice in New York and Florida since 2013 and 2014, respectively.   Both of us have extensive experience in internet related privacy matters.  We both participate in CLE courses, have been named Rising Stars in "Super Lawyer" magazine, and provide all our clients with personalized and skilled attention.

12.     A copy of my current CV is annexed hereto as <u>Exhibit 1</u> and incorporated herein by reference.

13.     I have been responsible for reviewing the time records in this case from its inception to the present. I am familiar with the activities that Cali Madia has performed in representing Plaintiff.  I am also familiar with the time and cost of those activities.

14.     Attached to this affirmation are true and correct copies of time entries for services rendered in this matter by Cali Madia and myself (Exhibit 2). These entries represent contemporaneous billing records for this matter. The time entries contain sufficient detail of the task performed to show that the amount of time expended for the work described was reasonable. Moreover, given my role in the case, familiarity with the work performed, and my experience, as further described below, I have personal knowledge that the amount of time expended was reasonable.

15.     Our client initially retained our services on or about December 18, 2023.

16.     Pursuant to the terms of our retainer, our hourly billing rate is $500.00 per partner.  Our current hourly rate is $600.00 an hour.

17.     The rates charged by each attorney were and are less than the customary and normal rates charged to other clients at the times each of the services was performed.

18.     Both the hours spent by us and the rates charged for those hours are reasonable and were necessary for the representation of Plaintiff in this case.

19.     I have given lectures throughout the country on internet disclosure actions as well as those relating to image based sexual abuse.  Our law firm filed the first lawsuit under the New York City Administrative Code in this area, and we have multiple ongoing cases in New York and New Jersey state courts as well as New York federal courts.

20.     This area of law is relatively new, and there are few attorneys who practice in this field.  Based on calls with clients and prospective clients, I suspect we are among an even smaller grouping of firms in New York/New Jersey willing to provide cost-free consultations, much less accept such cases on contingency.

21.     I realize that working 112.80 hours on a matter that resolved after a default may seem excessive.  However, this action was unique wherein Plaintiff had attorneys monitoring the websites daily for nearly four months as images were being posted almost every day.  The evidence needed to be preserved.  Importantly, Defendant continued to upload J.G.'s intimate images and increasingly identifying information about her despite knowing that she suspected him and that police were actively investigating the matter.  Additionally, the spread of the images, and years of damage to J.G. was immense.  Even after Defendant's devices were seized by police, third parties continued to re-upload the content initially shared by him and will likely do so for the remainder of Plaintiff's life and beyond.

22.     As such, the claim for attorney's fees and the potential to receive same from the defendant is a highly motivating factor for a firm engaging in this line of work.

23.     In Doe v. Eisenberg, a case out of Texas Southern District Court relating to the nonconsensual dissemination of intimate images, the court held that hourly rates of $825 for a partner and $494 and $443 for attorneys who graduated law school in 2017 was reasonable Doe v. Eisenberg, Civil Action No. H-16-1149, 2021 U.S. Dist. LEXIS 189740, at *6 (S.D. Tex. July 23, 2021).  Notably, the court in Doe v. Eisenberg reduced the 927.2 hours requested by the attorneys by 105.3 hours, finding that 821.9 hours of work in such a case was reasonable.  Id.

24.     Recently, in Webbs v Green, (2025 US Dist LEXIS 92653, at *7 [DNJ May 13, 2025, Civil Action No. 2:24-7763]), a New Jersey federal court found our fee of $500.00 to "be reasonable when compared to the rates charged in other cases with similar circumstances."

25.     Had we not been representing Plaintiff in this matter, our attorneys would have been fully utilized on other billable client work.

**b. New Jersey's Fee-Shifting Statutes Do Not Require Proportionality Between Damages Recovered and Counsel-Fee Awards**

26.    "A reasonable attorney's fee may exceed the value of the recovery by the plaintiff" Balducci v. Cige, 240 N.J. 574, 599 (2020).

27.    New Jersey's fee-shifting statutes will not be construed to require "proportionality between damages recovered and counsel-fee awards even if the litigation, as in this case, vindicates no rights other than those of the plaintiff" Szczepanski, 366.

28.    The Superior Court Appellate Division spoke to this in JHC Indus. Services, LLC in 2021 in the context of consumer fraud cases with minor losses, stating that in such cases "attorneys' fees frequently would exceed the damages suffered" but "[n]evertheless, the Legislature intended plaintiffs to have access to the court system to pursue relatively small claims against deceptive retailers" and that in such cases the ability of a plaintiff to obtain attorney's fees was among the "deterrent aspects of the legislation" JHC Indus. Servs., LLC v. Centurion Cos., Inc., 469 N.J. Super. 306, 313 (App. Div. 2021).

29.    The JHC Indus. Servs., LLC court held that the lower court had "erred in reading a proportionality requirement into the attorney's fee provision of the statute and in deciding it could not grant plaintiff's fee request for $104,670.51 expended to recover the $30,500 Centurion refused to pay plaintiff after if fully performed" (Id. at 314). It further indicated that "'…reasonable attorneys fees, and costs of suit' are 'not only to make whole the victim's loss, but also to punish the wrongdoer and to deter others from engaging in similar…practices'" Id., 315.

**c. Public Interest is Served by Plaintiff's Successful Prosecution**

30.    New Jersey courts recognize that, in some cases, "an overriding public interest is also served by plaintiff's successful prosecution" Szczepanski, 366.

31.    In Szczepanski, the court held that a plaintiff's recovery of damages "fulfills and vindicates the legislative purpose of preventing employers from retaliating unjustly against employees who oppose practices or acts forbidden by the LAD" and that the fee shifting provision within the statute "was intended to assure that counsel for litigants like plaintiff will receive reasonable compensation for services reasonably rendered to effectuate the LAD's objectives, even if the contingent fee payable based on the damages recovered did not constitute a reasonable fee for those services" Id.

32.    New Jersey's invasion of privacy laws were updated in 2016 to address "upskirting" and specifically provide that a criminal conviction was not a prerequisite for pursuing a civil action.

33.    In signing the legislation, then-governor Chris Christie tellingly stated the following:

> As parents in this highly digital age, we're always concerned about protecting our children and our privacy, and a big part of doing that is for state criminal laws to keep up with new and emerging technologies…This new law targets perpetrators of a perverse and growing form of pornography that victimizes vulnerable women and children in a matter of seconds (Exhibit 11, p. 23).

34.    In Doe v. Eisenberg, the court considered the plaintiff's "priority was to obtain 'a legal determination that Defendant Saul Eisenberg posted and publicized their intimate videos.'"

35.    After 14 years of representing victims of nonconsensual pornography, we are consistently reminded that no amount of money can undo or repair the loss of privacy and safety that results from one's intimate content being disseminated without their consent.  Likewise, once such content is posted online, even if the victim is successful in having it removed, there

are never any guarantees that it will not be posted again in the future.  Even when financially favorable results are obtained by way of settlement, plaintiffs rarely ever feel whole again.

36.    Assuming victims are lucky enough to determine the identity of their abuser, generally speaking, defendants are remiss to admit to their wrongdoings for fear of criminal consequences and many go to great lengths to avoid or discourage civil lawsuits and judgments, including filing for bankruptcy, banking exclusively using corporate accounts, filing for name changes, and moving out of state.

37.    For many victims of nonconsensual pornography, the greatest sense of justice and healing is accomplished when a defendant either takes accountability for their actions or is held accountable by a judge or jury.

38.    Our firm and firms like ours should not be discouraged from getting justice for other victims for financial reasons alone.


### d.  The Court Should Enhance the Award by 25 Percent Fee Enhancement Given the Significant Risk of Nonpayment.

39.    Once the lodestar has been determined, the second step in this attorney fee analysis is to determine an appropriate fee enhancement. Rendine, 141 N.J. at 334. The Supreme Court expressed the rationale for a fee enhancement as follows:

> The problem of unequal access to the courts in order to vindicate congressional policies and enforce the law is not simply a problem for lawyers and courts. Encouraging adequate representation is essential if the laws of this Nation are to be enforced. Congress passes a great deal of lofty legislation promising equal rights to all.
> Although some of these laws can be enforced by the Justice Department or other Federal agencies, most of the responsibility for enforcement has to rest upon private citizens, who must go to court to prove a violation of law ... But without the availability of counsel fees, these rights exist only on paper. Private citizens must be given not only the rights to go to court, but also the legal resources. If the citizen does not have the resources, his day

> in court is denied him; the congressional policy [that] he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers. <u>Rendine</u>, 141 N.J. at 323.

40. In terms of the amount of the fee enhancement, the <u>Rendine Court</u> held that the ordinary enhancement "should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar." <u>Id</u>. at 343.

41. The enhancement sought herein is consistent with the relevant factors which this Court must consider, specifically: (1) the partially contingent nature of the litigation; (2) the degree of the risk of damages; (3) the hazards inherent in litigation; and (4) other factors that aggravate the risk of nonpayment, such as vigorous resistance to the plaintiff's claims by the defendants, as outlined in <u>Rendine,</u> 141 N.J. at 334.

42. Cases involving nonconsensual pornography always carry a large risk of no recovery. Plaintiff has the burden of not only proving that the defendant put images on an anonymous website, but the dissemination caused her harm. Plaintiff is faced with the shame of having to testify about her sexual history, naked body, and then have strangers view these images that were intended to be private. Frustratingly, plaintiffs also must testify about the far-reaching nature of such an invasion and discuss, in depth, how the dissemination harmed them when, in many instances, defendants have engaged in such activity with the specific intention of causing such harm.

43. It is respectfully requested that a 25% fee enhancement is appropriate given the difficulty of this matter and the high degree of risk.

**A. Additional Costs and Expenses**

44.     As part of the trial on damages, Plaintiff was required to retain the services of Dr. Asia Eaton and Dr. Sophie Maddocks.

45.     Dr. Maddocks met with the Plaintiff and prepared a voluminous report.  Dr. Maddocks' report cost Plaintiff **$4,000.00** (Exhibit 3).

46.     Plaintiff's additional expenses relating to case amount to $**1,164.64** (Exhibit 4).

47.     In total, not including trial expenses relating to litigation, Plaintiff incurred **$5,164.64** in expenses.


**CONCLUSION**

48.     This application includes the time and resources spent with regard to this firm's filing of the within application for fees and costs through May 27, 2025.

49.     In sum, we respectfully assert that the reasonable and appropriate total lodestar amount for this matter to date is **$56,400.00.**

50.     Further, we submit that under the enhancement factors a 25% enhancement is appropriate of in the amount of **$14,100** for a total attorneys' fee award in the amount of **$70,500.00**.

51.     Finally, it is requested that Plaintiff be awarded her costs in the amount of $**5,164.64** for a total award of **$75,664.64.**

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.
Dated: May 30, 2025

                                    By: _____
                                         Daniel Szalkiewicz, Esq.

# Exhibit 1

# Daniel S. Szalkiewicz, Esq.
*Founder,* Veridian Legal P.C.
23 West 73rd Street, Suite 102
New York, New York 10023
(212) 706-1007 daniel@veridianlegal.com

## EDUCATION

- B.A. in Philosophy, Politics and Law, Binghamton University
- J.D., Seton Hall University School of Law

## BAR ADMISSIONS

- State of New York                                          2010 (active)

- State of New Jersey                                        2010 (active)

- U.S. District Court for the Eastern District of New York    2019 (active)

- U.S. District Court for the Southern District of New York   2011 (active)

- U.S. District Court for the Northern District of New York   2023 (active)

- District Court of the State of New Jersey                   2010 (active)

- U.S. Court of Appeals (2d Cir.)                             2013 (active)

- U.S. District Court for the Eastern District of Michigan    2022 (active)

- U.S. District Court for the District of Oklahoma            2023 (active)

## SELECT SPEAKING ENGAGEMENTS AND CLE PRESENTATIONS

1. Suffolk County Bar Association, Continuing Legal Education Presenter, Artificial *Intelligence & Deepfake Pornography,* October 2023
2. New York State Bar Association, Continuing Legal Education Presenter, *Stealing Your Image and the Grateful Dead: Amendments to New York's Right of Publicity Law,* February 2021

DANIEL SZALKIEWICZ

3. North American Insulation Manufacturers Association, Presenter, _Case Studies in Identifying Anonymous Websites_, September 2019
4. myLawCLE, Continuing Legal Education Presenter, _Online Defamation Lawsuits and Internet Discovery_, January 2019
5. Federal Bar Association, Continuing Legal Education Presenter, _Strategies to Identify and Combat False Internet Speech_, November 2018
6. Seton Hall University School of Law, _Information Privacy Law Lecture_, November 2018
7. North American Insulation Manufacturers Association, Presenter, _Strategies to Identify and Combat Internet Speech_, September 2018
8. Ideal Stream Public Media, Speaker, _The Sound of Ideas; Revenge Porn_, January 2018
9. myLawCLE, Continuing Legal Education Presenter, _Online Defamation and Website Removal_, November 2017
10. myLawCLE, Continuing Legal Education Presenter, _How to Remove Defamation and Other Damaging Content from the Internet_, January 2018
11. Lawline, Continuing Legal Education Presenter, _Online Defamation and Website Removal_, July 2017
12. National Business Institute, Continuing Legal Education Presenter, _Online Defamation and Libel_, April 2017

**CASES OF INTEREST (FROM 2017 FORWARD)**

1. Plaintiff's Attorney, _A.R. v. princeluvsfeet at ano_, Supreme Court of New York, Bronx County, 800470/2024
2. Plaintiff's Attorney, _J.G. v. paladopoliz et al_, Supreme Court of New York, Bronx County, 820143/2023
3. Plaintiff's Attorney, _M.K. v. Gurvinder Singh_, Supreme Court of New York, Queens County, 724502/2023
4. Plaintiff's Attorney, _N.M. v. aznlvrs et al_, Supreme Court of New York, Bronx County, 817308/2023
5. Plaintiff's Attorney, _C.D. v. John Doe_, Supreme Court of New York, Bronx County, 806715/2023
6. Plaintiff's Attorney, _P.F. v. Brown et ano_, Supreme Court of New York, Queens County, 705519/2023
7. Petitioner's Attorney, _N.C. v. Snap, Inc. et al_, Supreme Court of New York, Bronx County, 803502/2023
8. Defendant's Attorney, _Doe v. Arnone et al_, Supreme Court of New York, New York County, 151938/2023
9. Plaintiff's Attorney, _R.S. v. Gupta_, Supreme Court of New York, Kings County, 504797/2023
10. Plaintiff's Attorney, _Trump Village Section 4, Inc. et al v. Violeta Luca et al_, Supreme Court of New York, Richmond County, 151089/2023
11. Petitioner's Attorney, _R. L. v. Meta Platforms, Inc. et al_, Supreme Court of New York, Bronx County, 818031/2022E

DANIEL SZALKIEWICZ

12. Plaintiff's Attorney, _Trump Village Section 4, Inc. et al v. Me et al_, Supreme Court of New York, Richmond County, 150016/2023

13. Petitioner's Attorney, _M. C. v. Meta Platforms, Inc et al_, Supreme Court of New York, Rockland County, 84238/2022

14. Plaintiff's Attorney, _L. D. v. Keith Dalessio_, Supreme Court of New York, New York County, 159729/2022

15. Plaintiff's Attorney, _B. W. v. yellowcake et al_, Supreme Court of New York, Bronx County, 814403/2022E

16. Plaintiff's Attorney, _Faith Marone v. Benny Zheng et al_, Supreme Court of New York, Suffolk County, 200829/2022

17. Plaintiff's Attorney, _Alesha Martinez v. Savendra Somdat_, Supreme Court of New York, Nassau County, 611262/2022

18. Plaintiff's Attorney, _J.M. v. Victor Rozanov_, Supreme Court of New York, Bronx County, 611262/2022

19. Petitioner's Attorney, _L.R. v. Google LLC, and Facebook, Inc._, Supreme Court of New York, New York County, 160429/2021

20. Plaintiff's Attorney, _Jong Min Baek v. Facebook, Inc._, Supreme Court of New York, New York County, 151815/2021

21. Plaintiff's Attorney, _Jane Doe v. Blackrabbit19_, Supreme Court of New York, Bronx County, 34452/2020

22. Plaintiff's Attorney, _Navid Moshtael v. T-Mobile USA, Inc._, Supreme Court of New York, New York County, 151727/2020

23. Plaintiff's Attorney, _F.B. v. Facebook, Inc._, Supreme Court of New York, Bronx County, 20213/2020

24. Plaintiff's Attorney, _J.A. v. Google LLC, and Facebook, Inc._, Supreme Court of New York, Bronx County, 34984/2019E

25. Plaintiff's Attorney, _Navid Moshtael v. Google LLC_, Supreme Court of New York, New York County, 160145/2019

26. Plaintiff's Attorney, _P.F. v. Verizon Wireless LLC., WhatsApp, Inc., Facebook, Inc., Onvoy LLC._, Supreme Court of New York, Bronx County, 29430/2019

27. Plaintiff's Attorney, _C.T. v. Facebook, Inc. and Google LLC._, Supreme Court of New York Bronx County, 26956/2019

28. Plaintiff's Attorney, _M.D. v. Facebook, Inc., Paypal Inc, Twitter, Inc., Instagram, Inc., Perry Street Software, Inc., Grindr LLC, Verizon Media LLC, Microsoft Corporation and United Internet_, Supreme Court of New York, Bronx County, 26601/2019

29. Plaintiff's Attorney, _Wendy Salinas v. Victor Tavares._, Supreme Court of New York, Westchester County, 57102/2019

30. Plaintiff's Attorney, _Oscar Abraham Jaeger v. Tanya V, Jorge Gonzalez, Mohammad Batista and Google, LLC._, Supreme Court of New York, Bronx County, 24262/2019

31. Plaintiff's Attorney, _Joe Symon v. John Doe(s), Reddit, Inc., Google LLC, and Twitter, Inc._, Supreme Court of New York, Bronx County, 24072/2019

32. Plaintiff's Attorney, _A.K. v. Facebook, Inc._, Supreme Court of New York, Bronx County, 21245/2019

DANIEL SZALKIEWICZ

33. Plaintiff's Attorney, _Rey Furniture Inc. v. Google LLC_, Supreme Court of New York, Bronx County, 33591/2018
34. Plaintiff's Attorney, _Harway Terrace Inc. v. Facebook, Inc._, Supreme Court of New York, Bronx County, 31624/2018
35. Plaintiff's Attorney, _K.W. v. Google LLC., Apple Inc., EHarmony Inc., Spark Networks Inc., IAC/Interactive Corp._, and Charter Communications Inc. Supreme Court of New York, Bronx County, 30207/2018
36. Plaintiff's Attorney, _Williams & Williams v. Mark M._, Supreme Court of New York, Bronx County, 29619/2018
37. Plaintiff's Attorney, _L.C. v. Instagram, Inc._, Supreme Court of New York, Bronx County, 29472/2018
38. Plaintiff's Attorney, _Ashley Tiburcio v. Facebook, Inc. and Instagram, Inc._, Supreme Court of New York, Bronx County, 28300/2018
39. Plaintiff's Attorney, _C.M. v. Anonyhandle@Yahoo.Com_, Supreme Court of New York, Bronx County, 26868/2018
40. Plaintiff's Attorney, _A.R. v. Mark.Romani.370._, Supreme Court of New York, Bronx County, 26743/2018
41. Plaintiff's Attorney, _A.L. v. John Doe._, Supreme Court of New York, Bronx County, 25032/2018
42. Plaintiff's Attorney, _ChiroNewYork, PPLC v. Doris M. and Denis A._, Supreme Court of New York, Bronx County, 23271/2018
43. Plaintiff's Attorney, _Steuben Foods Management LLC v. John Doe._, Supreme Court of New York, Bronx County, 23180/2018
44. Plaintiff's Attorney, _Board of Managers of Brightwater Towers Condominium v. Google LLC._, Supreme Court of New York, Bronx County, 22458/2018
45. Plaintiff's Attorney, _Nasir Mogul v. IPOListing_, Supreme Court of New York, Bronx County, 20196/2018
46. Plaintiff's Attorney, _J.R. et al. v. Google, Inc._, Supreme Court of New York, Bronx County, 36469/2017
47. Plaintiff's Attorney, _John Doe v. Facebook, Inc._, Supreme Court of New York, Bronx County, 31093/2017
48. Plaintiff's Attorney, _Jean Michel Braik v. Scott_, Supreme Court of New York, Bronx County, 31042/2017
49. Plaintiff's Attorney, _Jane Doe v. Facebook, Inc. and Instagram, Inc._, Supreme Court of New York, Bronx County, 29709/2017
50. Plaintiff's Attorney, _Peter Cedeno v. Google, Inc. and Birdeye, Inc._, Supreme Court of New York, Bronx County, 29227/2017
51. Plaintiff's Attorney, _Monique Saran v. Google, Inc., Snap Inc., Association of American Medical Colleges, and Facebook, Inc._, Supreme Court of New York, Bronx County, 27756/2017
52. Plaintiff's Attorney, _John Doe v. Digital Ocean, Inc._, Supreme Court of New York, Bronx County, 26684/2017
53. Plaintiff's Attorney, _John Doe v. Automattic, Inc. d/b/a Wordpress.com_, Supreme Court of New York, Bronx County, 23948/2017

DANIEL SZALKIEWICZ

54. Plaintiff's Attorney, *Isaac Mildenberg Martahaim v. Automattic, Inc. d/b/a Wordpress.com*, Supreme Court of New York, Bronx County, 23620/2017

55. Plaintiff's Attorney, *Jane Doe v. Tumblr, Inc.*, Supreme Court of New York, New York County, 153709/2017

56. Plaintiff's Attorney, *Jane Doe v. Sluts75*, Supreme Court of New York, Bronx County, 21659/2017

57. Plaintiff's Attorney, *Reginald Tiu v. Mich Elle*, Supreme Court of New York, Bronx County, 21428/2017

58. Plaintiff's Attorney, *Bar Lagziel v. Blzona69*, Supreme Court of New York, New York County, 150590/2017


**PROFESSIONAL AFFILATIONS**
- New York State Bar
- New York State Academy of Trial Lawyers

# Exhibit 2

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 12/18/2023 | ⏱ | Initial telephone call and consultation with client, drafting of welcome package ● Billed invoice 362 | 00148- NCP v Jones | Daniel Szalkiewicz | 0.80h | $500.00 | - | $400.00 |
| 12/18/2023 | ⏱ | Review of images on Archived.moe, indexed and preserved same ● Billed invoice 362 | 00148- NCP v Jones | Daniel Szalkiewicz | 0.60h | $500.00 | - | $300.00 |
| 12/19/2023 | ⏱ | Continued review of content online and archiving of same ● Billed invoice 362 | 00148- NCP v Jones | Daniel Szalkiewicz | 0.90h | $500.00 | - | $450.00 |
| 12/19/2023 | ⏱ | Review of links for archived.moe, sent same to website, drafting of email to 4chan, drafting of summons with notice, filing same with Bronx County ● Billed invoice 362 | 00148- NCP v Jones | Daniel Szalkiewicz | 0.80h | $500.00 | - | $400.00 |
| 12/19/2023 | ⏱ | Drafting of subpoena to Meta, sent same to process server for service ● Billed invoice 362 | 00148- NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| 12/19/2023 | ⏱ | Telephone call with client, review of correspondence from court, drafting of new summons, filed same ● Billed invoice 362 | 00148- NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| 12/21/2023 | ⏱ | Review of email from client and drafting of email to same ● Billed invoice 362 | 00148- NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| | | | | | 113.40h | | $0.00 0.00h | $61,750.00 113.40h |

05/27/2025
9:48 AM

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 12/26/2023 | 🕐 | Telephone call with client regarding status of case<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.90h | $500.00 | - | $450.00 |
| 12/26/2023 | 🕐 | Review of new content online, saved same<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.40h | $500.00 | - | $200.00 |
| 12/27/2023 | 🕐 | Continued review of content online, documenting same and submitting take down requests<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 8.60h | $500.00 | - | $4,300.00 |
| 12/27/2023 | 🕐 | continued review of images<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 2.60h | $500.00 | - | $1,300.00 |
| 12/28/2023 | 🕐 | Completed review and preserving of content from archived, review of email from Meta, drafting of email to same<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 5.30h | $500.00 | - | $2,650.00 |
| 12/28/2023 | 🕐 | Telephone call with client regarding status of case<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 1.10h | $500.00 | - | $550.00 |
| 01/02/2024 | 🕐 | Drafting of email to Meta regarding subpoena.<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| 01/03/2024 | 🕐 | Telephone call with Facebook's attorney about domesticating a subpoena. telephone call with client with status update of matter.<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.30h | $500.00 | - | $150.00 |
| | | | | | 113.40h | | $0.00<br>0.00h | $61,750.00<br>113.40h |

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 01/03/2024 | 🕐 | Drafting of California domestication package for Meta<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.30h | $500.00 | - | $150.00 |
| 01/05/2024 | 🕐 | Review of new images on Archived.moe, preserved same<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.70h | $500.00 | - | $350.00 |
| 01/10/2024 | 🕐 | Telephone call with client regarding status of case<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.20h | $500.00 | - | $100.00 |
| 01/14/2024 | 🕐 | Review of email from client, review of links online, drafting of Subpoena on 4chan, sent same, review of subpoena response<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.30h | $500.00 | - | $150.00 |
| 01/15/2024 | 🕐 | Review of content online, drafting of subpoena to 4chan, review of response from same<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.40h | $500.00 | - | $200.00 |
| 01/19/2024 | 🕐 | Drafting of subpoena to 4chan, review of new content online<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.30h | $500.00 | - | $150.00 |
| 01/20/2024 | 🕐 | Monitoring of 4chan, drafting of subpoenas to 4chan<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 1.20h | $500.00 | - | $600.00 |
| 01/21/2024 | 🕐 | Review of images online, drafting of subpoenas to 4chan<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.70h | $500.00 | - | $350.00 |
| | | | | | 113.40h | | $0.00<br>0.00h | $61,750.00<br>113.40h |

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|------|-------------|--------|------|-----|----------|------------------|--------------|
| 01/22/2024 | 🕐 | Review of images online, drafting of subpoena to Verizon, drafting of email to PD<br>● Billed invoice 362 | 00148-█<br>NCP v Jones | Daniel Szalkiewicz | 0.40h | $500.00 | - | $200.00 |
| 01/22/2024 | 🕐 | Telephone call with T Mobile, telephone call with Verizon regarding subpoena request<br>● Billed invoice 362 | 00148-█<br>NCP v Jones | Daniel Szalkiewicz | 0.40h | $500.00 | - | $200.00 |
| 01/23/2024 | 🕐 | Review of images online<br>● Billed invoice 362 | 00148-█<br>NCP v Jones | Daniel Szalkiewicz | 0.50h | $500.00 | - | $250.00 |
| 01/24/2024 | 🕐 | Review of email from client, review of content online and preserving same, drafting of email to detective.<br>● Billed invoice 362 | 00148-█<br>NCP v Jones | Daniel Szalkiewicz | 1.70h | $500.00 | - | $850.00 |
| 01/25/2024 | 🕐 | Drafting of domestication package, sent same to California<br>● Billed invoice 362 | 00148-█<br>NCP v Jones | Daniel Szalkiewicz | 0.30h | $500.00 | - | $150.00 |
| 01/26/2024 | 🕐 | Review of websites for additional images<br>● Billed invoice 362 | 00148-█<br>NCP v Jones | Daniel Szalkiewicz | 0.30h | $500.00 | - | $150.00 |
| 01/26/2024 | 🕐 | Review of images, drafting of new subpoena to 4Chan<br>● Billed invoice 362 | 00148-█<br>NCP v Jones | Daniel Szalkiewicz | 0.40h | $500.00 | - | $200.00 |
| 01/28/2024 | 🕐 | Review of images on 4chan, conversations with client, drafting of subpoenas to 4chan, review of messages from same | 00148-█<br>NCP v Jones | Daniel Szalkiewicz | 1.70h | $500.00 | - | $850.00 |
| | | | | | **113.40h** | | **$0.00**<br>0.00h | **$61,750.00**<br>113.40h |

05/27/2025
9:48 AM

# Activities Export

| Date | ▲ Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| | | ● Billed invoice 362 | | | | | | |
| 01/29/2024 | 🕐 | Drafting of email to Google's lawyer<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| 01/30/2024 | 🕐 | Review of images online<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| 01/30/2024 | 🕐 | Locating and storing of new images online from 4chan, drafting of subpoena to same, telephone call with investigator, telephone call with client regarding case, conversations with client regarding next steps going forward<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 1.60h | $500.00 | - | $800.00 |
| 01/31/2024 | 🕐 | Review of images online, conversation with client, review of email from Google, sent email to same<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.30h | $500.00 | - | $150.00 |
| 01/31/2024 | 🕐 | Telephone call with investigator, conversation with client regarding same<br>● Billed invoice 362 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.30h | $500.00 | - | $150.00 |
| 02/01/2024 | 🕐 | Review of images online to see if client was reposted<br>● Billed invoice 388 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.20h | $500.00 | - | $100.00 |
| 02/01/2024 | 🕐 | Telephone call with Verizon regarding subpoena response | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.20h | $500.00 | - | $100.00 |
| | | | | | **113.40h** | | **$0.00**<br>0.00h | **$61,750.00**<br>113.40h |

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|------|-------------|--------|------|-----|----------|------------------|--------------|
| | | ● Billed invoice 388 | | | | | | $200.00 |
| 02/02/2024 | 🕐 | Review of new content online, draft of subpoena to 4chan, submitted same <br><br>● Billed invoice 388 | 00148-NCP v Jones | Daniel Szalkiewicz | 0.40h | $500.00 | - | |
| 02/06/2024 | 🕐 | Review of new content online <br><br>● Billed invoice 388 | 00148-NCP v Jones | Daniel Szalkiewicz | 0.90h | $500.00 | - | $450.00 |
| 02/07/2024 | 🕐 | Review of content online, drafting of new subpoena to 4Chan <br><br>● Billed invoice 388 | 00148-NCP v Jones | Daniel Szalkiewicz | 0.30h | $500.00 | - | $150.00 |
| 02/09/2024 | 🕐 | Review of content online and drafting of new subpoena <br><br>● Billed invoice 388 | 00148-NCP v Jones | Daniel Szalkiewicz | 0.30h | $500.00 | - | $150.00 |
| 02/10/2024 | 🕐 | Review of content online, drafting of subpoena to 4chan, sent same, review of response <br><br>● Billed invoice 388 | 00148-NCP v Jones | Daniel Szalkiewicz | 0.20h | $500.00 | - | $100.00 |
| 02/12/2024 | 🕐 | Review of content, drafting of new subpoena, review of responses <br><br>● Billed invoice 388 | 00148-NCP v Jones | Daniel Szalkiewicz | 0.40h | $500.00 | - | $200.00 |
| 02/13/2024 | 🕐 | Review of email from client, review of new content online, drafting of new subpoena, looking into Kyle <br><br>● Billed invoice 388 | 00148-NCP v Jones | Daniel Szalkiewicz | 0.70h | $500.00 | - | $350.00 |
| 02/17/2024 | 🕐 | Review of content online, drafting of new subpoena, filed same | 00148-NCP v Jones | Daniel Szalkiewicz | 0.30h | $500.00 | - | $150.00 |
| | | | | | 113.40h | | $0.00 <br> 0.00h | $61,750.00 <br> 113.40h |

05/27/2025 9:48 AM

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|------|-------------|--------|------|-----|----------|------------------|--------------|
| 02/19/2024 | 🕐 | Drafting of email to JP regarding expert services<br>● Billed invoice 388 | 00148-███ NCP v Jones<br>● Billed invoice 388 | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| 02/19/2024 | 🕐 | Review of new content online, review of email from JP, sent same to same<br>● Billed invoice 388 | 00148-███ NCP v Jones | Daniel Szalkiewicz | 0.20h | $500.00 | - | $100.00 |
| 02/20/2024 | 🕐 | Review of content online, drafting of new subpoenas, conversation with client concerning same<br>● Billed invoice 388 | 00148-███ NCP v Jones | Daniel Szalkiewicz | 0.60h | $500.00 | - | $300.00 |
| 02/20/2024 | 🕐 | Review of email from Google regarding preserving of IP addresses<br>● Billed invoice 388 | 00148-███ NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| 02/21/2024 | 🕐 | Review of content on 4chan<br>● Billed invoice 388 | 00148-███ NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| 02/22/2024 | 🕐 | Review of content online regarding JG<br>● Billed invoice 388 | 00148-███ NCP v Jones | Daniel Szalkiewicz | 0.20h | $500.00 | - | $100.00 |
| 02/22/2024 | 🕐 | Drafting of subpoena to 4chan, review of response from same<br>● Billed invoice 388 | 00148-███ NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| 02/23/2024 | 🕐 | Review of subpoena responses from T Mobile | 00148-███ NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| | | | | | **113.40h** | | **$0.00**<br>0.00h | **$61,750.00**<br>113.40h |

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|------|-------------|--------|------|-----|----------|------------------|--------------|
| | | ● Billed invoice 388 | | | | | | |
| 02/25/2024 | ⏱ | Serving subpoena on 4Chan, review of subpoena response<br>● Billed invoice 388 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.20h | $500.00 | - | $100.00 |
| 02/26/2024 | ⏱ | Serving subpoena on 4Chan, review of subpoena response to match IP addresses<br>● Billed invoice 388 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.20h | $500.00 | - | $100.00 |
| 02/27/2024 | ⏱ | Conversation with client, review and organization of file<br>● Billed invoice 388 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 1.20h | $500.00 | - | $600.00 |
| 02/29/2024 | ⏱ | Review of content online, drafting of subpoena and serving 4 chan.<br>● Billed invoice 388 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.40h | $500.00 | - | $200.00 |
| 03/01/2024 | ⏱ | Review of content, drafting of new subpoena to 4chan<br>● Unbilled | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.20h | $600.00 | - | $120.00 |
| 03/03/2024 | ⏱ | Review of new content online, drafting of subpoena to 4Chan, review of email from same<br>● Unbilled | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.20h | $600.00 | - | $120.00 |
| 03/04/2024 | ⏱ | Conversation with client, drafting of email to expert<br>● Billed invoice 388 | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.20h | $500.00 | - | $100.00 |
| 03/04/2024 | ⏱ | Drafting of email to expert regarding retention | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| | | | | | 113.40h | | $0.00<br>0.00h | $61,750.00<br>113.40h |

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| | | Billed invoice 388 ● | | | | | | |
| 03/06/2024 | 🕐 | Review of 4chan board for new images<br>Billed invoice 388 ● | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.10h | $500.00 | - | $50.00 |
| 03/07/2024 | 🕐 | Telephone call with client regarding search warrant and new information<br>Unbilled ● | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.30h | $600.00 | - | $180.00 |
| 03/08/2024 | 🕐 | Begin drafting of lawsuit against Tyler<br>Unbilled ● | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 1.30h | $600.00 | - | $780.00 |
| 04/03/2024 | 🕐 | Review of documents for detective<br>Unbilled ● | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.50h | $600.00 | - | $300.00 |
| 04/17/2024 | 🕐 | Review of complaint, drafting of changes to same, drafting of demand letter<br>Unbilled ● | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.60h | $600.00 | - | $360.00 |
| 04/23/2024 | 🕐 | phone call with client<br>Unbilled ● | 00148-<br>NCP v Jones | Cali Madia | 0.50h | $500.00 | - | $250.00 |
| 05/27/2024 | 🕐 | Review of email from client regarding status of case<br>Unbilled ● | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.10h | $600.00 | - | $60.00 |
| 06/28/2024 | 🕐 | Review of new content online, drafting of new subpoenas, sent same<br>Unbilled ● | 00148-<br>NCP v Jones | Daniel Szalkiewicz | 0.30h | $600.00 | - | $180.00 |
| | | | | | **113.40h** | | **$0.00**<br>0.00h | **$61,750.00**<br>113.40h |

05/27/2025
9:48 AM

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|------|-------------|--------|------|-----|----------|------------------|--------------|
| 07/01/2024 | ⏱ | Review of letter from Frontier, drafting of letter to same, sent same ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 0.10h | $600.00 | - | $60.00 |
| 07/08/2024 | ⏱ | Review of information online and images, review of complaint, sent same to client for approval. ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 1.20h | $600.00 | - | $720.00 |
| 07/09/2024 | ⏱ | drafting of motion to proceed using initials ● Unbilled | 00148- NCP v Jones | Cali Madia | 1.70h | $500.00 | - | $850.00 |
| 07/11/2024 | ⏱ | Conversation with client, drafting of correspondence to opposing counsel ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 0.10h | $600.00 | - | $60.00 |
| 07/15/2024 | ⏱ | Review of client's changes to complaint, drafting of same, conversation with same ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 0.40h | $600.00 | - | $240.00 |
| 07/16/2024 | ⏱ | Drafting of changes to the complaint, conversations with client concerning steps going forward ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 0.40h | $600.00 | - | $240.00 |
| 07/29/2024 | ⏱ | Initial review of subpoena response from Frontier ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 0.10h | $600.00 | - | $60.00 |
| 07/30/2024 | ⏱ | editing and rewriting of portions of | 00148- | Cali Madia | 1.20h | $500.00 | - | $600.00 |
| | | | | | **113.40h** | | **$0.00** **0.00h** | **$61,750.00** **113.40h** |

05/27/2025 9:48 AM

11/17

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| | | complaint, sending summary of case to CC at Fox  ● Unbilled | NCP v Jones | | | | | |
| 08/01/2024 | 🕐 | Review of Frontier subpoena response, research into defendant, conversation with client  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 0.80h | $600.00 | - | $480.00 |
| 08/02/2024 | 🕐 | Meeting with client and filing of lawsuit, filing of motion  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 2.30h | $600.00 | - | $1,380.00 |
| 08/06/2024 | 🕐 | Hiring of process server to serve Jones  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 0.10h | $600.00 | - | $60.00 |
| 08/14/2024 | 🕐 | Review of email from process server regarding status of serve  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 0.10h | $600.00 | - | $60.00 |
| 09/09/2024 | 🕐 | Drafting of notice of lawsuit to defendant, served same  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 0.20h | $600.00 | - | $120.00 |
| 09/30/2024 | 🕐 | Review of criminal file  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 0.30h | $600.00 | - | $180.00 |
| 10/10/2024 | 🕐 | Telephone call with client, review of images online, drafting of new subpoena to determine owner of accounts, served same  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 2.40h | $600.00 | - | $1,440.00 |
| | | | | | 113.40h | | $0.00 0.00h | $61,750.00 113.40h |

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|------|-------------|--------|------|-----|----------|------------------|--------------|
| 10/18/2024 | 🕐 | Drafting of email to Verizon regarding natting router ● Unbilled | 00148- ██ NCP v Jones | Daniel Szalkiewicz | 0.10h | $600.00 | - | $60.00 |
| 10/18/2024 | 🕐 | Review of information online, drafting of new subpoenas ● Unbilled | 00148- ██ NCP v Jones | Daniel Szalkiewicz | 0.90h | $600.00 | - | $540.00 |
| 10/30/2024 | 🕐 | Review of process server information, conversation with client concerning service ● Unbilled | 00148- ██ NCP v Jones | Daniel Szalkiewicz | 0.30h | $600.00 | - | $180.00 |
| 11/05/2024 | 🕐 | Telephone call with Verizon regarding status of subpoena ● Unbilled | 00148- ██ NCP v Jones | Daniel Szalkiewicz | 0.20h | $600.00 | - | $120.00 |
| 11/11/2024 | 🕐 | Review of evidence from Verizon, drafting of email to same regarding production ● Unbilled | 00148- ██ NCP v Jones | Daniel Szalkiewicz | 0.20h | $600.00 | - | $120.00 |
| 11/11/2024 | 🕐 | Drafting of email to opposing counsel regarding status of case. ● Unbilled | 00148- ██ NCP v Jones | Daniel Szalkiewicz | 0.10h | $600.00 | - | $60.00 |
| 11/14/2024 | 🕐 | Review of file, drafting of letter motion to court requesting additional time to serve, drafting of motion for pro hac vice for CPM, filed same ● Unbilled | 00148- ██ NCP v Jones | Daniel Szalkiewicz | 1.20h | $600.00 | - | $720.00 |
| 11/18/2024 | 🕐 | Review of email from opposing counsel regarding more time. | 00148- ██ NCP v Jones | Daniel Szalkiewicz | 0.10h | $600.00 | - | $60.00 |
| | | | | | 113.40h | | $0.00 0.00h | $61,750.00 113.40h |

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|------|-------------|--------|------|-----|----------|------------------|--------------|
| 11/20/2024 | 🕐 | Review of court order extending period of time to serve, drafting of email to client concerning same  ● Unbilled | 00148-■ NCP v Jones | Daniel Szalkiewicz | 0.10h | $600.00 | - | $60.00 |
| 11/20/2024 | 🕐 | Review of video of service, filed same with court  ● Unbilled | 00148-■ NCP v Jones | Daniel Szalkiewicz | 0.20h | $600.00 | - | $120.00 |
| 12/13/2024 | 🕐 | Review of file, drafting of request for clerk's default, filed same  ● Unbilled | 00148-■ NCP v Jones | Daniel Szalkiewicz | 0.60h | $600.00 | - | $360.00 |
| 12/16/2024 | 🕐 | Review of content online, drafting of new subpoena to motherless (whoresigns)  ● Unbilled | 00148-■ NCP v Jones | Daniel Szalkiewicz | 0.30h | $600.00 | - | $180.00 |
| 12/16/2024 | 🕐 | Drafting of motion for default judgment  ● Unbilled | 00148-■ NCP v Jones | Daniel Szalkiewicz | 4.80h | $600.00 | - | $2,880.00 |
| 12/17/2024 | 🕐 | reviewing and editing motion for default judgment  ● Unbilled | 00148-■ NCP v Jones | Cali Madia | 1.30h | $500.00 | - | $650.00 |
| 12/18/2024 | 🕐 | Completed motion for default judgment, conversation with client regarding same, filed same with court  ● Unbilled | 00148-■ NCP v Jones | Daniel Szalkiewicz | 0.60h | $600.00 | - | $360.00 |
| | | | | | 113.40h | | $0.00  0.00h | $61,750.00  113.40h |

05/27/2025
9:48 AM

14/17

# Activities Export

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 01/02/2025 | ⏲ | Review of court order, filing of pro hac notice  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 0.20h | $600.00 | - | $120.00 |
| 01/15/2025 | ⏲ | Review of file, telephone call with client, review of decision, drafting of letter motion for discovery  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 3.40h | $600.00 | - | $2,040.00 |
| 01/16/2025 | ⏲ | Telephone call with Dr. Eaton, conversation with client  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 0.50h | $600.00 | - | $300.00 |
| 01/22/2025 | ⏲ | Review of file, drafting of declaration in support of discovery  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 2.30h | $600.00 | - | $1,380.00 |
| 01/22/2025 | ⏲ | Drafting of motion in support of subpoenas, filed same, telephone call with client regarding same  ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 1.90h | $600.00 | - | $1,140.00 |
| 01/22/2025 | ⏲ | drafting of certification for Sussman  ● Unbilled | 00148-█ NCP v Jones | Cali Madia | 0.90h | $500.00 | - | $450.00 |
| 01/22/2025 | ⏲ | phone call with client  ● Unbilled | 00148-█ NCP v Jones | Cali Madia | 0.20h | $500.00 | - | $100.00 |
| 01/28/2025 | ⏲ | phone call with hospital about JG; drafting and sending of HIPAA to client; sending of same to hospital  ● Unbilled | 00148-█ NCP v Jones | Cali Madia | 0.40h | $500.00 | - | $200.00 |
|  |  |  |  |  | 113.40h |  | $0.00 0.00h | $61,750.00 113.40h |

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|------|-------------|--------|------|-----|----------|------------------|--------------|
| 02/03/2025 | ⏱ | review of email from hospital with doctor certification; discussion with DSS concerning same; drafting of email response requesting changes to certification ● Unbilled | 00148- ███ NCP v Jones | Cali Madia | 0.30h | $500.00 | - | $150.00 |
| 02/10/2025 | ⏱ | Service of text order on defendant, drafting of declaration of service, filed same with court ● Unbilled | 00148- ███ NCP v Jones | Daniel Szalkiewicz | 0.20h | $600.00 | - | $120.00 |
| 02/12/2025 | ⏱ | Review of records for inquest ● Unbilled | 00148- ███ NCP v Jones | Daniel Szalkiewicz | 3.80h | $600.00 | - | $2,280.00 |
| 02/21/2025 | ⏱ | review of new content, drafting of email to Erome and subpoena ● Unbilled | 00148- ███ NCP v Jones | Daniel Szalkiewicz | 0.40h | $600.00 | - | $240.00 |
| 02/24/2025 | ⏱ | Review of subpoenas and served same on Google, Verizon and ATT ● Unbilled | 00148- ███ NCP v Jones | Daniel Szalkiewicz | 0.40h | $600.00 | - | $240.00 |
| 03/11/2025 | ⏱ | Review of evidence in preparation for hearing, telephone call with prosecutors office concerning criminal case ● Unbilled | 00148- ███ NCP v Jones | Daniel Szalkiewicz | 0.60h | $600.00 | - | $360.00 |
| 03/17/2025 | ⏱ | Review of new content on internet ● Unbilled | 00148- ███ NCP v Jones | Daniel Szalkiewicz | 0.40h | $600.00 | - | $240.00 |
| 03/17/2025 | ⏱ | Continued review of content online ● Unbilled | 00148- ███ NCP v Jones | Daniel Szalkiewicz | 0.40h | $600.00 | - | $240.00 |
| | | | | | 113.40h | | $0.00 0.00h | $61,750.00 113.40h |

# Activities Export

| Date | ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|---|------|-------------|--------|------|-----|----------|------------------|--------------|
| 04/14/2025 | | ⏱ | Review of text order, drafting of notice to defendant, sent same, filed declaration of service with court ● Unbilled | 00148 ▉ NCP v Jones | Daniel Szalkiewicz | 0.40h | $600.00 | - | $240.00 |
| 04/29/2025 | | ⏱ | phone calls with Cristin, Mike, Tsai; drafting of questions for JG ● Unbilled | 00148 ▉ NCP v Jones | Cali Madia | 5.10h | $500.00 | - | $2,550.00 |
| 04/30/2025 | | ⏱ | drafting of questions for witnesses ● Unbilled | 00148 ▉ NCP v Jones | Cali Madia | 3.40h | $500.00 | - | $1,700.00 |
| 04/30/2025 | | ⏱ | drafting of questions for witnesses ● Unbilled | 00148 ▉ NCP v Jones | Cali Madia | 1.70h | $500.00 | - | $850.00 |
| 05/01/2025 | | ⏱ | Preparation for trial ● Unbilled | 00148 ▉ NCP v Jones | Daniel Szalkiewicz | 4.40h | $600.00 | - | $2,640.00 |
| 05/06/2025 | | ⏱ | Travel to and attendance at inquest ● Unbilled | 00148 ▉ NCP v Jones | Daniel Szalkiewicz | 8.20h | $600.00 | - | $4,920.00 |
| 05/13/2025 | | ⏱ | drafting of damages memo ● Unbilled | 00148 ▉ NCP v Jones | Cali Madia | 0.60h | $500.00 | - | $300.00 |
| 05/14/2025 | | ⏱ | drafting of damages memo ● Unbilled | 00148 ▉ NCP v Jones | Cali Madia | 2.30h | $500.00 | - | $1,150.00 |
| 05/19/2025 | | ⏱ | Continued drafting of damage memo ● Unbilled | 00148 ▉ NCP v Jones | Daniel Szalkiewicz | 1.30h | $600.00 | - | $780.00 |
| | | | | | | 113.40h | | $0.00 0.00h | $61,750.00 113.40h |

# Activities Export

| Date | ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|---|------|-------------|--------|------|-----|----------|------------------|--------------|
| | | | ● Unbilled | NCP v Jones | Szalkiewicz | | | | |
| | | | | | | 113.40h | | $0.00 0.00h | $61,750.00 113.40h |

# Exhibit 3

# Sophie Maddocks

# INVOICE

Sophie Maddocks, Ph.D.
117 S 22nd St, Apt 2F, Philadelphia, PA 19103
Phone: (347) 613-9165
Email: sjjmaddocks@gmail.com

Date: May 27 2025

Due Date: **July 27, 2025**

**Bill to:**

Daniel S. Szalkiewicz, Esq.
Veridian Legal P.C.
23 West 73rd Street, Suite 102
New York, New York 10023

| NO | ITEM DESRIPTION | HOURLY FEE | HOURS | TOTAL |
|----|-----------------|-----------|-------|-------|
| 1 | Review and evaluation of case material. Scheduling and conducting Interview, case research, literature review, affidavit, and preparation of reports. | $250.00 | 16 | $4,000.00 |
| | | Total | | **$4,000.00** |

**Preferred Payment Method**

1    Bank Transfer
     Sophie Maddocks
     Account number ▨▨▨▨▨
     Routing number ▨▨▨▨▨
     Swift code: PNCCUS▨
     Branch Address: PNC Bank, 500 First Avenue,
     Mailstop: P7-PFSC-03-W, Pittsburgh, PA 15219

**Please note:**

If payment for services exceeds $600, firm/agency must issue a 1099 form for tax purposes within 8 weeks of payment or before December 31st of the invoice year.

Sophie Maddocks, PhD

# Exhibit 4

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|------|-------------|--------|------|-----|----------|------------------|--------------|
| 08/02/2024 | | Filing fee for case against TJ  ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 1.00 | $405.00 | - | $405.00 |
| 08/06/2024 | | Process Server Summons and Complaint  ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 1.00 | $105.00 | - | $105.00 |
| 08/12/2024 | | Process server fee  ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 1.00 | $105.00 | - | $105.00 |
| 09/09/2024 | | Postage  ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 1.00 | $2.31 | - | $2.31 |
| 11/14/2024 | | Postage  ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 1.00 | $1.25 | - | $1.25 |
| 12/13/2024 | | Postage  ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 1.00 | $0.97 | - | $0.97 |
| 12/29/2024 | | Postage  ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 1.00 | $2.04 | - | $2.04 |
| 01/02/2025 | | Pro Hac fee  ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 1.00 | $250.00 | - | $250.00 |
| 01/22/2025 | | Postage  ● Unbilled | 00148- NCP v Jones | Daniel Szalkiewicz | 1.00 | $12.38 | - | $12.38 |
| | | | | | | | $0.00  0.00h | 0.00h |

05/27/2025
9:41 AM

# Activities Export

| Date | ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|------|---|------|-------------|--------|------|-----|----------|------------------|--------------|
| 02/10/2025 | | | Postage ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 1.00 | $0.69 | - | $0.69 |
| 05/06/2025 | | | Amtrak PHI to NYC ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 1.00 | $144.00 | - | $144.00 |
| 05/06/2025 | | | Amtrak NYC to PHI ● Unbilled | 00148-█ NCP v Jones | Daniel Szalkiewicz | 1.00 | $136.00 | - | $136.00 |
| | | | | | | | | $0.00 0.00h | 0.00h |